Thomas KELLIHER, Plaintiff, Appellant,

v.

GENERAL TRANSPORTATION
SERVICES, INC., Defendant,
Appellee.

No. 93–2366.

United States Court of Appeals,
First Circuit.

Heard June 8, 1994.

Decided July 20, 1994.

Michael Avery with whom Jennifer Meyer-hardt, Francis Marini and Marini & Turner were on brief, for appellant.

John D. Boyle, with whom Boyle & Morrissey was on brief, for appellee.

Before TORRUELLA, Circuit Judge, CAMPBELL, Senior Circuit Judge, and BOUDIN, Circuit Judge.

LEVIN H. CAMPBELL, Senior Circuit Judge.

Thomas Kelliher, plaintiff-appellant, brought a diversity action in negligence against General Transportation Services, Inc., defendant-appellee, in the United States District Court for the District of Massachusetts. A jury trial began on October 13, 1993. Two days later, answering special verdict questions, the jury found for General Transportation. After having moved unsuccessfully for a new trial, Kelliher appealed from the judgment and from the denial of his motion for a new trial. We affirm.

I.

On the afternoon of March 26, 1988, fifteen-year-old Thomas Kelliher of Hanson, Massachusetts, borrowed his older brother's "ten-speed" bicycle so that he could ride to Del's High Street Salon to get a haircut. This journey required Kelliher to ride in the streets of Hanson. Kelliher testified that it was his usual practice when riding a bicycle in the street to stay about a foot away from the shoulder of the road.

On his way to Del's, Kelliher headed south down High Street, which has two lanes, running northbound and southbound, divided by a center line. In the area where the accident occurred, High Street is approximately twenty-two feet wide, with each lane measuring roughly eleven feet from the edge of the pavement to the opposite edge of the center line. At trial, there was evidence that High Street has "soft" shoulders, with broken pavement, and that sand runs along the side of the street.

While riding on High Street, Kelliher looked back over his left shoulder and saw a

Mercedes–Benz truck, owned by General Transportation, coming up in his lane from behind him. He then turned back, looked forward, and proceeded down High Street. The next thing Kelliher recalled was falling to his left and feeling pain in his left elbow. Kelliher then looked up and saw the Mercedes–Benz truck about ten feet away continuing south on High Street in the same lane in which he had been riding.

Robert O'Brien, along with his wife and children, was driving in his pick-up truck about 150 feet behind the Mercedes–Benz truck when the accident occurred. He observed the truck pass near Kelliher—but not touch him or his bicycle—traveling at a speed of about ten to fifteen miles per hour. Then, as the truck was passing Kelliher, O'Brien saw Kelliher fall back to his left towards the road. After Kelliher fell, O'Brien pulled up to where Kelliher was lying, and went to see how he was. He saw a pool of blood and a bone coming through Kelliher's left arm. When O'Brien asked whether the truck had hit him, Kelliher said, "No." O'Brien observed the bicycle's tires in the sand that lined the section of High Street where Kelliher fell.

Jeffrey Baenziger, the driver of the Mercedes–Benz truck, was an employee of General Transportation. At the time of the accident, Baenziger was purportedly headed to a house on High Street to deliver merchandise sold by Sears Roebuck. As Baenziger approached his destination, he saw Kelliher riding his bicycle near the edge of the road. Baenziger testified that he knew there was sand just off the shoulder of High Street and that a bicycle might fall if its tires went into the sand. With this knowledge, Baenziger told the jury that he gave Kelliher five to seven feet when he passed him, putting the center of his truck in the middle of High Street so that half of his truck was in the southbound lane and half was in the northbound lane. Baenziger further claimed that he kept his truck in the center of High Street until he reached the house where he was to make the delivery. Then, he stopped the truck, and backed into the driveway. When Baenziger got out of his truck, he saw a group of about five people gathered in the

street. He approached the gathering to find out what was happening. Baenziger saw Kelliher lying on the ground, and observed that his left arm was injured. He waited at the scene until the police arrived.

Officer Eugene Andrews of the Hanson Police, who arrived on the scene shortly after the accident, gave testimony that differed from Baenziger's explanation as to why he stopped his truck. According to Andrews, Baenziger told him that he stopped his truck when somebody flagged him down. As to Baenziger's testimony that half of his truck was in the northbound lane of High Street when he passed Kelliher, Robert O'Brien testified that, after Kelliher fell, he saw the truck continue in the southbound lane of High Street. Mrs. O'Brien testified that she never saw the truck drive into the other lane when it passed Kelliher.

Officer Andrews testified that, when he arrived at the accident scene, he approached Kelliher and saw him lying four or five feet from the paved edge of High Street. He observed that Kelliher's left arm was "crushed" and "essentially stuck to the road surface." His left elbow was about five feet from the edge of the road.

After conducting an investigation, Officer Andrews concluded that Kelliher had ridden his bicycle into the sand that lined High Street, and that this had caused him to fall over into the street, where he was run over by Baenziger's truck approximately five feet from the edge of the roadway. There was no evidence, according to Officer Andrews, that Kelliher had been forced off the road by the truck or that the truck had hit him prior to running over his arm. It was Officer Andrew's further conclusion that Baenziger had committed no violation and that no citation should issue.

## II.

■ Kelliher maintains on appeal that the "essence" or "theory" of his case was that, regardless of whether the truck Baenziger was driving caused his fall, it passed too closely to him, so as to run over his arm after he fell. He assigns as error the court's

failure to give his requested jury instruction No. 9:

> Plaintiff is not required to prove that there was an actual collision between the defendant's truck and the bicycle or between the truck and the plaintiff himself, in order to recover. It is sufficient for plaintiff to prove that his injuries resulted from an accident that was caused by the negligence of the defendant or its agent.

The district court declined to give this instruction, although, as later discussed, its instruction on negligence and causation was not inconsistent and did not in any way limit plaintiff to recovering only if the truck collided with him.

Kelliher further complains that the court unduly limited the jury when, at the outset of its charge, it described the plaintiff's contentions as follows:

> In this case, the plaintiff contends that he was injured when a truck owned by the defendant, and driven by the defendant's employee, Jeffrey Baenziger, *either knocked or forced* the plaintiff off of his bicycle. The plaintiff contends that Mr. Baenziger was negligent in driving the truck and that his negligence caused the plaintiff's injuries. [Emphasis supplied.]

Kelliher maintains that by so describing his claim the court led the jury to think he could not recover unless he proved that the truck knocked or forced him off of his bicycle. We disagree.

In reviewing jury instructions, our principal focus " 'is to determine whether they tended to confuse or mislead the jury on the controlling issues.' " *Brown v. Trustees of Boston Univ.,* 891 F.2d 337, 353 (1st Cir. 1989) (quoting *Service Merchandise Co. v. Boyd Corp.,* 722 F.2d 945, 950 (1st Cir.1983)), *cert. denied,* 496 U.S. 937, 110 S.Ct. 3217, 110 L.Ed.2d 664 (1990); *e.g., Davet v. Maccarone,* 973 F.2d 22, 26 (1st Cir.1992). " '[T]he charge must be examined as a whole; portions of it are not to be treated in isolation.' " *Brown,* 891 F.2d at 353 (quoting *Service Merchandise,* 722 F.2d at 950). "An error in jury instructions will warrant reversal of a judgment only if the error is determined to have been prejudicial, based on a review of the record [in its entirety]." *Davet,* 973 F.2d at 26 (citing *Connors v. McNulty,* 697 F.2d 18, 21 (1st Cir.1983)).

To begin, we are not convinced that plaintiff indicated—as he now contends—that the "essence" of his case was that Baenziger was negligent simply because he drove his truck so closely to Kelliher that if the latter fell for some unrelated reason, his arm could be injured by the truck. This was definitely not the theory of negligence asserted in Kelliher's complaint—and no amendment was ever proposed. Rather the complaint alleged that "defendant's employee Baenziger [negligently] struck the plaintiff with the truck he was driving...." Nor was it the theory Kelliher's attorney stated to the jury at opening argument. Counsel asserted then that even if Baenziger's truck had not hit Kelliher, Baenziger was driving so perilously close to him "that he caused the accident, caused [him] to fall from his bicycle and caused him to be injured."

At closing argument Kelliher reiterated the foregoing theme, contending that "what we know for sure is that [Baenziger] was not driving in the middle of that road and that he gave [Kelliher] only about this much clearance of that side of the road, and that *as a result, as a result,* [Kelliher] fell and the truck drove over his arm." [Emphasis supplied.] To be sure, counsel also suggested in closing argument, as another ground of negligence, that the truck driver should have foreseen that plaintiff might fall off his bicycle for reasons unrelated to operation of the truck, so that his arm would go under the wheels. But this theory was interwoven with the earlier ones, which were not abandoned.

In these circumstances, it is perhaps not surprising that the district court should have characterized the plaintiff's contentions as being that the truck "either knocked or forced the plaintiff off of his bicycle." Plaintiff did not, thereafter, ask the court to rescind or revise this description of what he contended. After the charge, however, plaintiff did object to the court's failure to give his proposed instruction No. 9, telling the court in this connection that "[i]t is also a part of our theory of the case" that plaintiff might recover "if [he] fell and then the truck ran

over him simply because [it] was too close to him."

In deciding whether to amplify its instructions, the court was entitled to take into account whether it had already sufficiently covered the same ground. We think it had. Apart from the criticized initial description of plaintiff's contentions, the court had said nothing whatever in its charge regarding any need to prove that defendant's driver struck or forced Kelliher off the road. Special verdict question No. 1(a) read simply:

Do you find that the defendant's employee, Jeffrey Baenziger, was negligent with respect to the accident which occurred on March 26, 1988?

Explaining what the jury had to find in order to return a verdict for plaintiff, the district court stated:

In order to find for the plaintiff, Thomas Kelliher, on his negligence claim, you must find, (1) facts indicating a duty on the part of Mr. Baenziger to exercise reasonable care for Mr. Kelliher; (2) that Mr. Baenziger failed to exercise reasonable care; and (3) that Mr. Baenziger's failure to exercise reasonable care caused or contributed to the injury and consequent damage sustained by Mr. Kelliher.

Negligence is the failure of one owing a duty of care to another to exercise the duty of care which an ordinarily prudent person would exercise under similar circumstances. It is the failure, by act or omission, to use ordinary care under the circumstances. Ordinary care is that care which reasonably prudent persons exercise in the management of their own affairs in order to avoid injury to themselves or their property or to the person or property of others.

The court went on to say,

Massachusetts law requires that in approaching or passing a person upon a bicycle, the operator of a motor vehicle shall slow down and pass at a safe distance and with safe clearance and at a reasonable and proper speed. Evidence of compliance with or noncompliance with a traffic law may be considered by you as evidence bearing upon negligence, but neither compliance nor noncompliance with a traffic law is alone decisive of the claim of negli-

gence. Furthermore, apart from traffic laws, a person has a duty of reasonable care. Thus, if the evidence supports a finding that reasonable care requires something more than [what] was required by a traffic law, you may find negligence even in the face of evidence of compliance with the traffic law. Also, on the other hand, noncompliance with the traffic law is not alone decisive. It is only evidence of negligence. You will bear in mind that the standard you are to apply is the standard of reasonable care as I have defined it for you, and you are to reach your finding in light of all the facts and circumstances in evidence before you.

Taken as a whole, these instructions—particularly the explanation of Massachusetts traffic law—gave the jury ample guidance and leeway to find for Kelliher had it concluded that the distance between the moving truck and Kelliher was so close as, for whatever reason, to reflect a lack of care on Beanziger's part. What conduct and considerations would add up to a lack of care were properly left to the jury. We do not think the court's earlier characterization of plaintiff's claim would have deflected a reasonable jury from making up its own mind as to whether Baenziger was or was not negligent. The jury had been fully exposed to the parties' argument and to all the evidence, in a claim based on a motor vehicle accident well within the experience of the average juror to analyze.

Nowhere in the court's negligence instructions did it limit recovery to just those circumstances mentioned in describing plaintiff's claim. Had the jury concluded that Baenziger acted without proper care and that his conduct was causally related to the injury, it could and, we think would have found for plaintiff. While one can argue about the desirability of giving instruction No. 9, the court has leeway to instruct in its own language provided its description of the law was fair and accurate. We think these instructions provided the jury with the necessary guidance.

### III.

■ Kelliher next argues that the district court committed reversible error in refusing to deliver his requested consciousness of liability instruction, which read:

If you find that the driver of the defendant's vehicle knew that there had been an accident, and attempted to leave the scene of the accident without identifying himself, you may consider that fact as some proof of the defendant's liability.

Kelliher says that such an instruction was warranted because there was evidence at trial that, after Baenziger's truck ran over Kelliher's arm, Baenziger did not stop his vehicle until another motorist flagged him down. We are not persuaded.

"Although the determination of the substance of a jury instruction in a diversity case is a matter of state law, the grant or denial thereof is a matter of procedure controlled by federal law." *Farrell v. Klein Tools, Inc.,* 866 F.2d 1294, 1296 (10th Cir.1989). In this context, under Massachusetts law, "evidence that [a defendant] left the scene of [an] accident without identifying himself [can] properly be considered as some further proof of his liability." *Olofson v. Kilgallon,* 362 Mass. 803, 806, 291 N.E.2d 600, 602–03 (1973). Under federal law, however, even if a proffered jury instruction accurately describes the law, the instruction "should not be given if there is not sufficient evidence to support it." *Prentiss & Carlisle Co. v. Koehring–Waterous Div. of Timberjack, Inc.,* 972 F.2d 6, 10 (1st Cir.1992); *see Farrell,* 866 F.2d at 1297 ("Under federal law it is error to give an instruction when there is no evidence to support it."). Here, there was no evidence whatsoever from which a reasonable juror could infer that Baenziger left the scene *knowing that he had been involved in an accident.* Baenziger testified that he had no inkling that there had been an accident until well after it had occurred. His testimony was corroborated by Officer Andrews, who testified that Baenziger told him that he did not know that he had run over Kelliher. There was no evidence to the contrary. Accordingly, the district court did not err in refusing to deliver Kelliher's proffered consciousness of liability instruction.

The judgment below is affirmed. Costs to appellee.