Darryl W. ELLIOTT, Plaintiff, Appellant,

v.

S.D. WARREN COMPANY, et al., Defendants, Appellees.

No. 97–1848.

United States Court of Appeals,
First Circuit.

Heard Dec. 3, 1997.

Decided Jan. 13, 1998.

James G. Fongemie, with whom James J. MacAdam, Topsham, ME, and McTeague, Higbee, MacAdam, Case, Watson & Cohen were on brief, for Plaintiff, Appellant.

John J. Aromando, Portland, ME, with whom Jared S. des Rosiers and Pierce Atwood were on brief, for appellee S.D. Warren Co.

Leonard W. Langer, with whom Marshall J. Tinkle, Portland, ME, and Tompkins, Clough, Hirshon & Langer, P.A. were on brief, for appellees Rust Engineering & Construction, Inc. and Rust International Corporation.

Before SELYA, STAHL and LYNCH, Circuit Judges.

SELYA, Circuit Judge.

After unsuccessfully prosecuting a personal injury suit, plaintiff-appellant Darryl W. Elliott invites us to set aside a jury verdict in favor of the defendant S.D. Warren Company (Warren) and to reverse a summary judgment in favor of two other defendants (whom we sometimes shall refer to collectively as "Rust").[1] Discerning no error, we decline both invitations.

## I. BACKGROUND

Warren hired Rust to design, build, and manage the erection of an addition to its paper mill in Hinckley, Maine. That firm in turn subcontracted with its wholly-owned subsidiary, Allegheny Industrial Electrical, Inc. (Allegheny), to install electrical conduit. Elliott, an Allegheny employee, severely injured his left wrist while working at the job site on July 21, 1990. The injury occurred when Elliott caught his hand between a railing and an adjacent piece of electrical conduit on a stairway in a structure under construction. On Elliott's theory of the case, a lack of adequate clearance at the pinchpoint between the railing and the conduit caused him to catch his hand, pull back, fall, and injure himself.

The appellant collected workers' compensation benefits from his employer. Several years later, he settled his workers' compensation claim and brought a third-party tort suit against Warren and Rust in a Maine state court. In his complaint, he alleged that Warren, as the owner of the premises and the organization having control over the area where the accident occurred, had failed both to maintain a safe workplace and to warn of a dangerous condition. At the same time, he accused Rust of negligently installing the stairway and conduit. Invoking diversity jurisdiction—the appellant is a citizen and resident of New York, Warren is a Pennsylvania corporation that maintains its principal place of business in Massachusetts, and Rust is chartered in Delaware and headquartered in Alabama—the defendants removed the case to Maine's federal district court. *See* 28 U.S.C. §§ 1332(a), 1441(a).

---

1. The plaintiff labelled these defendants "Rust Engineering and Construction, Inc." and "Rust International Corporation." The identities and interrelationship of the various Rust-related entities bear tangentially on the propriety of the order granting summary judgment. We discuss that facet of the matter in Part III, *infra*.

In due season, the district court granted summary judgment in favor of Rust, *see* Fed. R.Civ.P. 56(c), holding that Rust was insulated from liability by the terms of the release that the appellant executed when he settled his workers' compensation claim. The lawsuit proceeded to trial against Warren and the jury returned a verdict for the defendant. This appeal ensued.

## II. THE JURY VERDICT

We first consider the appeal insofar as it pertains to the take-nothing jury verdict.

### A. *Negligence Per Se.*

The appellant's most substantial claim of error concerns the district court's instruction to the jury in regard to evidence which indicated that, at the spot where Elliott caught his hand, the distance between the railing and the electrical conduit was three-quarters of an inch, rather than the three inches required by a federal regulation promulgated by the Occupational Safety and Health Administration (OSHA). *See* 29 C.F.R. § 1910.23(e)(6) (1990) (stipulating that "[a]ll handrails and railings shall be provided with a clearance of not less than 3 inches between the handrail or railing and any other object"). Citing *Pratico v. Portland Terminal Co.*, 783 F.2d 255 (1st Cir.1985), the appellant requested the district court to charge the jury that the violation of an OSHA regulation constitutes negligence per se. The court refused, instead telling the jurors that they might consider any such violation "as evidence of negligence," whilst "evaluat[ing] the weight to be given to that violation along with all the other evidence in the case in determining whether the defendant was in fact negligent." The appellant assigns error.

*Pratico* involved a cause of action that arose under the Federal Employers' Liability Act (FELA), 45 U.S.C. §§ 51–60. In that context, we held that the violation of a regulation validly promulgated by OSHA under the Occupational Safety and Health Act (OSH Act), 29 U.S.C. §§ 651–678, could be deemed negligence per se. 783 F.2d at 266–67.

At the time this court decided *Pratico*, we had very little guidance from our sister circuits. *See id.* at 264 (identifying the Fifth Circuit as "the only circuit court to have addressed this issue") (citing, *inter alia, Rabon v. Automatic Fasteners, Inc.*, 672 F.2d 1231 (5th Cir. Unit B 1982), and *Melerine v. Avondale Shipyards, Inc.*, 659 F.2d 706 (5th Cir. Unit A 1981)). In the past twelve years, however, at least four other courts of appeals have considered when, if ever, a violation of an OSHA regulation might constitute negligence per se. *See Ellis v. Chase Communications, Inc.*, 63 F.3d 473, 477–78 (6th Cir. 1995); *id.* at 482–83 (Wellford, J., concurring); *Robertson v. Burlington N. R.R. Co.*, 32 F.3d 408, 409–11 (9th Cir.1994); *Ries v. National R.R. Passenger Corp.*, 960 F.2d 1156, 1160–65 (3d Cir.1992); *Albrecht v. Baltimore & Ohio R.R. Co.*, 808 F.2d 329, 332–33 (4th Cir.1987). Three of these four courts have held squarely that, because the OSH Act does not create a private right of action,[2] a violation of an OSHA regulation never can be equated with negligence per se. *See Robertson*, 32 F.3d at 410–11; *Ries*, 960 F.2d at 1158–65; *Albrecht*, 808 F.2d at 332–33. The Sixth Circuit, like the Fifth, leaves open the possibility that a violation of an OSHA regulation may, in some cases governed by federal law, constitute negligence per se, *see Ellis*, 63 F.3d at 477; *Rabon*, 672 F.2d at 1238, but it is rare in either circuit for a court actually to uphold a finding of negligence per se on this basis. Silhouetted against this backdrop, the *Pratico* holding is of questionable validity.

We need not pursue the status of *Pratico* today. For present purposes, it suffices to note that *Pratico* involved an FELA claim and the case's holding is properly limited to causes of action brought under that statute. The case at bar does not involve a cause of

---

**2.** The OSH Act provides in relevant part:
Nothing in this chapter shall be construed to supersede or in any manner affect any workmen's compensation law or to enlarge or diminish or affect in any other manner the common law or statutory rights, duties, or liabilities of employers and employees under any law with respect to injuries, diseases, or death of employees arising out of, or in the course of, employment.
29 U.S.C. § 653(b)(4).

action arising under federal law, but, rather, a cause of action arising under Maine's common law. This is a dispositive difference.

In *Pedraza v. Shell Oil Co.*, 942 F.2d 48 (1st Cir.1991), after first remarking that the OSH Act creates no private right of action, we cited *Albrecht* and held that OSHA regulations should be viewed as "prescrib[ing] standards of care relevant in common law negligence actions"; that in such actions, regulations promulgated under the OSH Act furnish evidence of the standard of care; and that proof of a violation of those regulations does not constitute negligence per se. *See id.* at 52. As the district court recognized, *Pedraza*, not *Pratico*, is the relevant First Circuit precedent for purposes of a garden-variety tort suit.

▮▮ To cinch matters, in a diversity action a federal court is constrained to apply state substantive law, *see Coyne v. Taber Partners I*, 53 F.3d 454, 457 (1st Cir.1995); *Daigle v. Maine Med. Ctr., Inc.*, 14 F.3d 684, 689 (1st Cir.1994), and, accordingly, Maine law controls here. Generally, in diversity cases the evidentiary effect accorded the violation of a safety rule is a matter of state law. *See Lones v. Detroit, Toledo & Ironton R.R. Co.*, 22 Ohio Misc. 115, 398 F.2d 914, 917–18 (6th Cir.1968). At best, an OSHA regulation is on a par with a statute, and under Maine's common law the violation of a safety statute is merely evidence of negligence, not negligence per se. *See French v. Willman*, 599 A.2d 1151, 1152 (Me.1991); *Dongo v. Banks*, 448 A.2d 885, 889–90 (Me.1982). Thus, by instructing the jury that it might consider a discerned OSHA violation as evidence of Warren's negligence—no more, no less—the district court gave the jurors proper guidance under the governing law.

### B. *Other Jury Instructions.*

The appellant next asserts that the district court erred in two related instances by refusing to incorporate specific language into its jury instructions. The appellant requested that, on the issue of Warren's control over the construction site, the judge (1) recount

for the jury a detailed twelve-point checklist itemizing those elements that he contended various courts around the country have found to support a finding of control; and (2) tell the jury that, if it concluded that Warren had retained control over the job site, then Warren had a "nondelegable" duty to furnish Allegheny's employees with a safe and suitable workplace. The district court declined to give either instruction *in haec verba*, but instead advised the jury:

> A contract between an owner and an independent contractor allocating responsibility between themselves for maintaining safe premises ... does not relieve the owner of liability to invitees for injuries sustained as a result of any dangerous conditions known or discoverable by the owner of the property.

> The defendant in this case contracted with Rust Engineering to construct its No. 3 paper machine building. This fact does not absolve the defendant for injuries sustained by its invitees on its premises while the construction project was in progress if the defendant retained control of any part of the work. One who entrusts work to a contractor, but retains control of any part of the work, is subject to liability for physical harm to others that is caused by his failure or its failure to exercise control with reasonable care. If you find that the defendant retained control of the construction site, then it is the duty of the defendant to furnish the employees of plaintiff's employer with a safe and suitable site.

▮▮ We reject the appellant's claims of error on both procedural and substantive grounds. From a procedural standpoint, the appellant did not object in the prescribed manner and at the appointed time either to the district court's refusal to give his requested instructions or to the charge actually given. *See* Fed.R.Civ.P. 51.[3] Although he did make a general reference to "what we discussed earlier today"—presumably referring to a chambers conference—when the district court called counsel to sidebar near

---

**3.** Rule 51 provides in pertinent part:
  No party may assign as error the giving or the failure to give an instruction unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection.

the end of the charge, we have held with echolalic regularity that strict compliance with Rule 51 is mandatory and that a failure of compliance will not be excused merely because the defaulting party brought the same matter to the trial judge's attention more specifically at some other time. *See, e.g., Poulin v. Greer,* 18 F.3d 979, 982 (1st Cir.1994); *United States v. Nason,* 9 F.3d 155, 160–61 (1st Cir.1993); *McGrath v. Spirito,* 733 F.2d 967, 968–69 (1st Cir.1984). As these cases illustrate, an objection raised emphatically in chambers before delivery of the charge does not, without more, preserve for review issues relating to the charge.

■ To be sure, even a forfeited error is amenable to plain-error review. *See Wells Real Estate, Inc. v. Greater Lowell Bd. of Realtors,* 850 F.2d 803, 809 (1st Cir.1988); *United States v. Griffin,* 818 F.2d 97, 100 (1st Cir.1987). But that step is unnecessary where, as here, no substantive error occurred. *See United States v. McKeeve,* 131 F.3d 1, 11 (1st Cir.1997). Leaving aside the procedural default, the standard of review is familiar:

> The trial court's refusal to give a particular instruction constitutes reversible error only if the requested instruction was (1) correct as a matter of substantive law, (2) not substantially incorporated into the charge as rendered, and (3) integral to an important point in the case.

*United States v. DeStefano,* 59 F.3d 1, 2 (1st Cir.1995).

■ The appellant easily satisfies the third prong of this test. After all, the intertwined issues of Warren's control over the premises and the duty it owed to Elliott while he was working at the construction site are integral to the appellant's theory of the case. *See Hanson v. Madison Paper Co.,* 564 A.2d 1178, 1179 (Me.1989) (discussing a property owner's duty under Maine law to make business premises safe for invitees); *Baker v. Mid Maine Med. Ctr.,* 499 A.2d 464, 467 (Me.1985) (similar). Even if we assume, however, that the first prong of the test also was satisfied,[4] the appellant nonetheless stumbles over the second prong.

■ A trial court is obliged to inform the jury about the applicable law, but, within wide limits, the method and manner in which the judge carries out this obligation is left to his or her discretion. Consequently, though both sides have a perfect right—indeed, a duty—to advise the judge what type of instructions they believe are fitting, neither is entitled to dictate the turn of phrase the judge should use to acquaint lay jurors with the applicable law. *See United States v. McGill,* 953 F.2d 10, 12 (1st Cir.1992) (warning that no litigant has a license "to put words in the judge's mouth"). "So long as the charge sufficiently conveys the [party's] theory, it need not parrot the exact language that the [party] prefers." *Id.*

■ When, as now, a disappointed suitor asks an appellate court to scrutinize a trial judge's word choices, "the central inquiry reduces to whether, taking the charge as a whole, the instructions adequately illuminate the law applicable to the controlling issues in the case without unduly complicating matters or misleading the jury." *DeStefano,* 59 F.3d at 3 (citations omitted). In this instance, we answer that inquiry affirmatively. Although the district court declined either to define legal concepts with great exactitude or to adopt the appellant's suggested twelve-point checklist, its charge made clear that Warren owed Elliott a duty of care if, and to the extent that, Warren retained control over any part of the workplace. No more was exigible. *See, e.g., Kelliher v. General Transp. Servs., Inc.,* 29 F.3d 750, 753 (1st Cir.1994) (explaining that further instructions are unnecessary when the judge "had already sufficiently covered the same ground"); *United States v. De La Cruz,* 902 F.2d 121, 122–23 (1st Cir.1990) (discussing a trial court's discretion in establishing an appropriate level of generality in jury instructions). By like token, even though the court refrained from using the term "nondelegable," as the appellant obviously would have preferred, it adequately instructed the jurors anent Warren's independent duty of care.

---

4. Without belaboring the point, we note that it is problematic whether Maine law incorporates all twelve of the points contained in the appellant's proposed multi-part instruction.

■ Of course, a trial judge's discretion in framing the issues for the jury is not unbridled, and an arbitrary refusal to amplify a hard-to-grasp concept might well invite reproof. Here, however, the district court had plausible reasons for refusing to augment its instructions. For example, Judge Brody saw the proffered checklist as a source of potential confusion and thus determined that, rather than run this risk, it would be preferable to present a more general statement of the law. This sort of judgment call is uniquely within the trial judge's discretion, and we are reluctant to second-guess it. Similarly, Judge Brody eschewed the term "nondelegable" because he reasonably feared such an allusion might mislead jurors into thinking that strict liability applied or that Warren was liable vicariously for the independent negligence of Allegheny. This decision, too, was well within the realm of his discretion. See Kelliher, 29 F.3d at 752 (explicating the trial judge's role in determining whether proposed jury instructions tend to confuse or mislead the jury on the controlling issues); Brown v. Trustees of Boston Univ., 891 F.2d 337, 353 (1st Cir.1989) (same).

■ The appellant makes a last-ditch argument that the jurors' submission of a mid-deliberation question proved the need for additional clarification on the nondelegability of Warren's duty.[5] We do not agree. The judge's original instructions accurately envisioned that the jury would wrestle with the issue of Warren's independent duty of care to invitees on its premises during the currency of the construction project. Rather than elaborate on these initial, entirely correct instructions (which, along with the rest of the charge, had been typed and furnished for use in the jury room during deliberations), Judge Brody elected to refer the jury to the original formulation. As a general rule, the necessity for giving a supplementary instruction to the jury is a matter within the sound discretion of the trial court. See United States v. Castenada, 555 F.2d 605, 611–12 (7th Cir.1977) (explaining that a judge, in responding to a jury request for reinstruction, may either supplement or simply reaffirm the original instruction). Of course, the situation would be different if the jurors' question clearly indicated confusion with respect to an important legal concept, see, e.g., Bollenbach v. United States, 326 U.S. 607, 612–13, 66 S.Ct. 402, 405, 90 L.Ed. 350 (1946), but that is not this case. Here, given the particular question and the clarity of the original charge, we descry no valid basis for questioning the judge's decision to abjure a supplementary instruction. See, e.g., United States v. Harris, 104 F.3d 1465, 1473–74 (5th Cir.1997); United States v. Smith, 104 F.3d 145, 148–49 (8th Cir.1997).

■ We have said enough on this score. The challenged instructions accurately stated the law, sufficiently informed the jury of the appellant's theory of the case, and worked no unfair prejudice to either party. As long as a jury charge satisfies these criteria, "the court's choice of language is largely a matter of discretion." DeStefano, 59 F.3d at 2. So it is here.

### C. Reference to Insurance.

Prior to trial, Warren, citing Fed.R.Evid. 403 (generally permitting the exclusion of evidence on the ground of undue prejudice) and Fed.R.Evid. 411 (specifically permitting the exclusion of evidence of liability insurance in certain circumstances), moved in limine to exclude any mention of indemnification or liability insurance. The motion referred to the indemnification and insurance provisions contained in the construction contract between Warren and Rust. The district court granted the motion provisionally, subject to the appellant's right to revisit the issue during the trial.

In his case in chief, the appellant offered the construction contract into evidence. Everyone realized that the contract constituted relevant evidence because it contained provisions setting forth on-site responsibilities for construction and safety. The court admitted it, without redaction, as a full exhibit. Both parties made use of the contract during their examination of witnesses, especially in refer-

5. The question read:

If we feel that Allegheny is negligent and S.D. Warren is in control, would the negligence carry over to S.D. Warren?

ence to whether Warren had retained control over the construction site. The appellant, however, did not ask the court to reconsider its order in limine, and neither party mentioned the indemnification and liability insurance clauses before the jury.

At the close of all the evidence, the appellant seized upon the fact that everyone apparently had overlooked the need for redaction. His counsel requested leave of court to comment in summation on the unredacted indemnification and insurance provisions. The court denied the request. The appellant assigns error, maintaining that the comments should have been allowed because the entire contract, including those provisions, was in evidence. We conclude that, in the peculiar circumstances of this case, the district court acted within its authority in limiting the use to which the contract could be put.

■ The touchstone of our analysis is Fed.R.Evid. 105, which states in pertinent part:

When evidence which is admissible as to one party or for one purpose but not admissible as to another party or for another purpose is admitted, the court, upon request, shall restrict the evidence to its proper scope and instruct the jury accordingly.

Fed.R.Evid. 105. This rule "provides the trial court with substantial control over both the admissibility of evidence and of limitations on its use." 1 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* § 105.02[1], at 105–6 (Joseph M. McLaughlin ed., 2d ed.1997). Although it would have been better practice for the district court to have redacted the indemnification and insurance provisions when it accepted the contract as a full exhibit, the record leaves little room to doubt that the parties understood that the admission of the exhibit did not signify a withdrawal or relaxation of the court's earlier in limine ruling. The appellant's claim that defense counsel waived the in limine ruling by failing to object to the introduction of the unredacted contract into evidence appears to be wishful thinking. At any rate, an affirmative waiver typically involves the purposeful relinquishment of a known right, and the self-serving claim that

Warren intended to relinquish the benefit of the in limine ruling is without support in the record.

We will not paint the lily. The parties understood that indemnification and insurance evidence had been banned, and the appellant does not now contest the validity of that prohibition. Taking that as a given, the trial court acted appropriately in refusing to allow the appellant to undercut the in limine ruling by taking advantage of a momentary lapse.

### III. THE SUMMARY JUDGMENT

The final component in the appellant's asseverational array is his claim that the district court improperly granted summary judgment in favor of Rust. Some additional facts are needed to put this claim into perspective.

At the time Warren decided to build the paper mill addition, it contracted with Rust Engineering Company, a wholly-owned subsidiary of Rust International Corporation. Rust Engineering then subcontracted the electrical work to its wholly-owned subsidiary, Allegheny. To complicate matters further, in March of 1995—well after the accident but prior to the institution of the third-party suit—Rust International Corporation changed its name to Rust Engineering and Construction, Inc. At about the same time the beneficial ownership of Rust Engineering Company apparently changed, and that company is now known as TRECO Construction Services, Inc.

On July 11, 1996, the appellant settled his workers' compensation claim against Allegheny, surrendering all future benefits in exchange for a lump sum payment of $215,000. As consideration for that stipend, the appellant executed a release in which he agreed to:

[R]emise, release and forever discharge Rust Engineering, the Employer and American Fidelity/MGA, the Insurance Carrier, plus their subsidiaries, successors, and related companies, present and former officers, agents, employees and attorneys (hereinafter referred to as 'Releasees'), of and from any and all actions, claims and

damages, including, but not limited to, claims to permanent impairment, compensation, rehabilitation, attorneys' fees, medical and other expenses, ... or any other action, of any kind, in law or equity, which Releasor now has or ever had against the Releasees arising out of or related in any way to the Releasor's employment at Rust Engineering, or to the claimed work-related injury of 7/21/90. . . .

In their motion for *brevis* disposition, the Rust defendants argued that this release insulated them from tort liability for the appellant's work-related injuries. The district court agreed, finding the release's language to be clear, unambiguous, and entirely dispositive. Accordingly, the court granted summary judgment.

■ We review an order granting summary judgment de novo, reading the record "in the light most congenial to the nonmovant and resolving all reasonable inferences in that party's favor." *Hachikian v. FDIC*, 96 F.3d 502, 504 (1st Cir.1996). To affirm such an order, we must be satisfied that there is no genuine dispute concerning any material fact and that the movant is entitled to judgment as a matter of law. *See Burnham v. Guardian Life Ins. Co.*, 873 F.2d 486, 488 (1st Cir.1989). Demonstrating the existence of a trialworthy issue demands "more than effusive rhetoric and optimistic surmise." *Cadle Co. v. Hayes*, 116 F.3d 957, 960 (1st Cir.1997).

The crux of the appellant's argument involves the interpretation of the release. We have recognized that summary judgment is an appropriate vehicle for resolving contract-interpretation disputes when the contract language is not infected by some material ambiguity. *See Newport Plaza Assocs. v. Durfee Attleboro Bank (In re Newport Plaza Assocs.)*, 985 F.2d 640, 644 (1st Cir.1993); *FDIC v. Singh*, 977 F.2d 18, 21 (1st Cir. 1992); *see also Fashion House, Inc. v. K mart Corp.*, 892 F.2d 1076, 1083 (1st Cir. 1989) (explicating the same rule in directed verdict context). On this basis, summary judgment was proper here.

■ The question whether a contract term is ambiguous is one of law for the judge. *See, e.g., Allen v. Adage, Inc.*, 967 F.2d 695, 698 (1st Cir.1992); *Town of Lisbon v. Thayer Corp.*, 675 A.2d 514, 516 (Me.1996). In this instance, the appellant's principal point is that he did not intend to release the particular Rust entities that he sued from tort liability by settling his workers' compensation claim with Allegheny; and that, in all events, the release of "Rust Engineering" is ambiguous, because no single company bears that exact name. To be sure, some names are close: Allegheny is a wholly-owned subsidiary of Rust Engineering Company (now known as TRECO Construction Services, Inc.), and, since March of 1995, a firm called Rust Engineering & Construction, Inc. (formerly Rust International Corporation) has been in existence. In the appellant's view, these close, but inexact, corporate names merely highlight the pervasive ambiguity.

■ It is black-letter law that the meaning of an unambiguous writing must be derived exclusively from within its four corners. *See Portland Valve, Inc. v. Rockwood Systems Corp.*, 460 A.2d 1383, 1387 (Me. 1983). Thus, a contracting party's professed intent cannot contradict the inexorable purport of written contractual provisions. *See Newport Plaza Assocs.*, 985 F.2d at 646–47. Here, the language of the release is broad, enveloping, and, in the final analysis, perfectly plain. The proliferation of "Rusts" adds a complicating note, but it does not engender any material ambiguity. No matter which company the label "Rust Engineering" signifies, the release goes on to shield all "related companies." By any interpretation, then, the Rust entities that the appellant sued are within the shelter afforded by the release.

The appellant's fallback position is no more tenable. He suggests that the third-person plural possessive "their" (as in "their subsidiaries, successors, and related companies") refers solely to the singular "American Fidelity/MGA." This suggestion not only comes perilously close to the outer boundaries of acceptable legal argumentation, but also offends abecedarian rules of grammar. We reject the suggestion out of hand. *See Chadwick–BaRoss, Inc. v. T. Buck Constr., Inc.*, 627 A.2d 532, 534 (Me.1993) (explaining that a contract need not rule out every conceiva-

ble construction of its terms in order to be unambiguous).

■ We need go no further. It is the proper office of an appellate court to affirm the entry of summary judgment when the words of a contract are so clear that "reasonable people could not differ over their meaning." *Boston Five Cents Sav. Bank v. Secretary of Dep't of HUD*, 768 F.2d 5, 8 (1st Cir.1985); *accord Singh*, 977 F.2d at 21. This is such a case.

*Affirmed. Costs to appellees.*