# United States Court of Appeals
## For the First Circuit

No. 05-1026

WILLIAM QUILES, ET AL.,

Plaintiffs, Appellants,

v.

JOAQUIN KILSON, ET AL.,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Nathaniel M. Gorton, U.S. District Judge]

Before

Lipez, Circuit Judge,
Coffin, Senior Circuit Judge,
and Carter,* Senior District Judge.

Stephen Hrones, with whom Hrones, Garrity and Hedges was on brief, for appellants.
William P. Breen, Jr., with whom Rebecca L. Andrews and Murphy, Hesse, Toomey & Lehane were on brief, for appellees.

October 21, 2005

---

*Of the District of Maine, sitting by designation.

**COFFIN, <u>Senior Circuit Judge</u>.** The plaintiffs in this action – an adult and seven children – claim that police officers unconstitutionally strip-searched them during a drug-related search of an apartment in Fitchburg, Massachusetts. At the time of the incident, the minor plaintiffs ranged in age from six to fifteen years old, and they either lived in, or were visiting family members at, the apartment. A jury trial on their civil rights claims against eight Fitchburg police officers and the City itself ended with verdics in favor of all defendants. On appeal, appellants challenge only the verdict in favor of the City,[1] contending that the district court committed reversible error by giving an incorrect response to a question posed by the jurors during their deliberations. Our review of the transcript and relevant law persuades us that the district court acted within its discretion in crafting its supplemental instruction. We consequently affirm the court's judgment.

## I. <u>Background</u>

On September 6, 1996, eight Fitchburg police officers went to the residence of Reynalda Larios pursuant to a search warrant that

---

[1] Plaintiffs alleged that the City was liable for the actions of the police officers because it had "established a custom of deliberate indifference to the rights of its citizens by not adequately training its officers on the proper methods for executing a search." <u>See</u> <u>Monell</u> v. <u>Dep't of Soc. Servs.</u>, 436 U.S. 658, 694 (1978)(municipal liability may be found where a city policy or custom caused a violation of a plaintiff's constitutional rights).

authorized them to search the premises for illegal drugs and other contraband. The warrant further directed the officers to "search any person present who may be found to have such property in his or her possession or under his or her control or to whom such property may have been delivered." The warrant was issued based on an affidavit alleging that Ms. Larios was selling drugs out of the apartment. The seven children who are appellants were Ms. Larios's daughters and nephews, and the adult was her brother, Ramon Larios, who shared the apartment with Ms. Larios and her children. At trial, each of the five female plaintiffs testified to having been taken into a bedroom, individually, and told by a female police officer to remove her clothes, including, in most cases, underwear. Ramon testified that he and his two nephews were searched in the living room, in the presence of two officers.[2]

The defendant police officers denied having strip-searched the plaintiffs. Several officers also testified that the custom or policy of the Fitchburg Police Department in executing search warrants was to conduct strip-searches only when individualized suspicion justified searching for contraband on an individual's person. However, Sergeant Joaquin Kilson, who wrote the affidavit supporting the search warrant, admitted at trial that he had

_____

[2] It appears that the boys were taken individually into the living room, but that Ramon was present during each of their searches. One nephew, Jose, testified that he was present during Ramon's search.

written a report stating that all persons present in the apartment at the time of the search were strip-searched. Kilson testified that he did not, in fact, know that such searches had occurred that day, but made the assumption "since it was a search for drugs" and officers frequently strip-search everyone present when drugs are involved because "[t]hey could be hidden anywhere."

At the close of evidence, the district court instructed the jurors and gave them a verdict form that previously had been reviewed with counsel. Question 5, which in its revised form had drawn no objections from counsel, stated:

> Do you find, by a preponderance of the evidence, that at the time of the subject search on September 6, 1996, the City of Fitchburg had a policy or a custom of strip-searching all people present when searches were executed <u>without individualized suspicion</u> in violation of their constitutional rights to be free from unwarranted searches?

Verdict Form at 4 (emphasis in original). Later in the day, the jurors sent the following message to the judge:

> The jury respectfully requests clarification of Question 5. Does this include searches in all types [of] cases, or just cases similar to this drug related search?

In a sidebar conference, the judge informed counsel that he intended to answer the inquiry by stating that "Question 5 relates to searches conducted pursuant to court-ordered search warrants." Plaintiffs' counsel objected and requested that the court add the words "in drug cases" at the end of his proposed supplemental

instruction.  Counsel argued that strip-searches are done only in drug cases and that "there's been no evidence as to any other type of search relative to this policy."  Defense counsel objected to the proposed alternative, stating, among other reasons, that the amendment would make the question "more narrow than it [previously] was presented" to the jury and would "focus too much attention to one particular issue."

The judge resolved to instruct the jurors as he originally had proposed and explained his decision as follows:

> The reason I'm not going to put . . . [plaintiffs' proposed reference to drugs] in is that drugs have not been emphasized or put into this verdict form or talked about during my instructions, and I'm not going to change the grounds of the instructions at this stage. I'm going to instruct the Court – instruct the jury as previously stated.

About thirty minutes after receiving the supplemental instruction, the jury returned with its verdicts for defendants.

On appeal, plaintiffs assert that the court abused its discretion in failing to limit the jury's inquiry regarding city policy or custom to drug-related search warrants, arguing that all of the evidence presented at trial related solely to drug searches. The jury's confusion, they maintain, could not have been anticipated and thus could not have been addressed earlier. Moreover, they argue that the court's error unquestionably was prejudicial because the jury's question indicated that it had found a policy of unconstitutional strip-searches in drug cases.

Defendants urge us to review the district court's response to the jury under the plain error standard, arguing that plaintiffs' complaint is really that the court's original version of Question 5 was overly broad – and that objection was not made in a timely manner. But they further contend that there was no reversible error under any standard. They maintain that the court's supplemental instruction was fully consistent with the law and the evidence presented at trial and struck an "appropriate balance between overinclusiveness and underinclusiveness."

## II. Discussion

The essence of plaintiffs' position is that it was clear throughout trial that this case was about a drug-related search, and that the district court was therefore obliged to dispel the jurors' confusion by explicitly instructing them to focus on a City policy or custom in drug cases.

The problem with that position is precisely the reason why the jury was confused: although the underlying episode did indeed stem from a drug investigation, time and time again during the trial the plaintiffs' claim against the City was framed in general terms, without specific reference to the drug-related nature of the search warrant. The following examples illustrate the predicament:

> *Plaintiffs' counsel to Sergeant Kilson: "What was your practice when you went into an apartment pursuant to a search warrant relative to the search of the persons in the apartment?"

*Again to Sergeant Kilson: "Do you know . . . what the regulations are relative to the search of people in an apartment pursuant to a search warrant?"

*And once again: "Are you aware if the City of Fitchburg had, at the time of this search, a policy relative to what searches were to take place when there was a search pursuant to a search warrant?"

During Kilson's testimony, plaintiffs' counsel introduced into evidence a document titled "Searches with a Warrant," an excerpt from the regulations of the Fitchburg Police Department that generally described appropriate procedures in executing a search. At least four other defendants were similarly questioned by plaintiffs' counsel.[3]

---

[3] Among the other instances:

Question to Detective William Lawrence: "Now, was there a policy with respect to strip-searches in the department at the time of the search . . . ?" On cross-examination, he was asked by defense counsel: "[W]as it your understanding in 1996 that simply because a person was present where a warrant was being executed, a search-all-persons warrant, that they were subject to a strip-search?"

Question to Officer Jude Chabot: "[I]t was customary, was it not, when executing a search warrant at a residence to search all those present, correct?"

Question to Officer Richards: "Well, it wouldn't surprise you that people were strip-searched during the execution of a search warrant, is that correct?"

An exchange with Sergeant Ed Thurston:

Q. Was there a written policy relative to strip-searches by the Fitchburg police at that time?
A. There was a policy, sir, that contained searches according to the search warrants.
Q. But that policy didn't discuss strip-searches, did it?
A. The policy discusses searches that are reasonable and

In closing argument, defense counsel, who spoke first, identified one of the remaining questions for the jurors as follows: "whether the plaintiff has proved that there was a policy in place or a custom of the City of Fitchburg to strip-search every person present there when they conducted a search-all-persons warrant." In her response, plaintiffs' counsel urged the jurors to resolve "the custom question" by looking to Sergeant Kilson's testimony that, in writing his report, he had assumed without knowing that all those present in the apartment had been strip-searched. Counsel continued:

> Why would he assume that they were strip-searched if there wasn't a custom of strip-searching all persons present when executing a search warrant?

Id.

In addition, the court's instructions and, as described above, the jury verdict form, both focused the jury's attention on a general policy for executing search warrants without specific reference to drug cases.[4] Moreover, the court's adoption of such

---

proper within the four corners of the warrant.

[4] In its instructions to the jury, the district court stated:

> Now, in this case the plaintiffs have alleged that the City of Fitchburg had a policy of strip-searching all persons during warranted searches regardless of individualized suspicion. In order to find the City responsible on those grounds, you must find that the policymaking officials of the city either knew or should have known of this strip-searching policy or custom.

-8-

an approach was consistent with plaintiffs' prior written submissions in the case. The complaint alleged a City custom of "deliberate indifference to the rights of its citizens by not adequately training its officers on the proper methods for executing a search," and plaintiffs' opposition to defendants' motion for summary judgment both repeated that language and noted that "the training manuals, policies, and procedures of the City of Fitchburg offer no guidelines concerning strip searches of children during the execution of search warrants."

We recognize that this broader framework was not the only approach suggested by the record. On multiple occasions when questioning defendants, plaintiffs' counsel elicited testimony focusing on drug searches. Officer Tabitha Pepple, for example, was asked whether there was "any policy of the City of Fitchburg or the Fitchburg Police Department in existence at the time to strip-search everybody in a drug search." Similarly, Sergeant Thurston, after he was asked the more general questions noted above, was asked by plaintiffs' counsel: "So the general policy at that time was, when there was an entry made pursuant to a warrant to search for drugs in an apartment, that everyone in the apartment would be searched?" On cross-examination, defense counsel reiterated the question: "There is no custom or practice of the Fitchburg Police Department to strip-search everybody when they execute a drug raid, was [sic] there?"

On another occasion, plaintiffs' counsel engaged in an extended exchange with Sergeant Kilson about the types of searches performed during execution of a search warrant, and many of the questions and answers touched specifically on the circumstances in drug searches. Kilson observed that, in most instances, anyone in an apartment where drug dealing was suspected was there either to buy or sell drugs, "so they were subjected to a search." He indicated that strip-searches were common in such cases because "drugs are very easily hidden. They could be hidden anywhere. We found drugs in diapers, baby clothing."

In opening argument, as well, the particular context of this case was the focus of plaintiffs' remarks. Counsel told the jurors that they would hear testimony that police officers routinely strip-searched children when they suspected drug activity and were executing a warrant that authorized a search of all persons present.

Given this evolution of plaintiffs' case, we think it unsurprising that the jury sought clarification of its charge. Indeed, the jurors' recognition of the ambiguity reflects favorably on their attentiveness to the task they were assigned. And while it may be that plaintiffs from the start, and consistently throughout the proceedings, viewed the issue in its more limited scope, we cannot say the same for either defense counsel or the court. Plaintiffs' repeated general references to the City's

training with respect to the execution of search warrants, and their acquiescence to the district court's broadly framed instructions and jury verdict form, reasonably could have led the court and opposing counsel to understand the challenge to be to a general practice that, in the present case, simply happened to have occurred in a drug search.

Putting aside any issue of plaintiffs' waiver,[5] we believe that what we have described thus far amply demonstrates that the court's carefully phrased supplemental instruction was well within its discretion.  See Elliott v. S.D. Warren Co., 134 F.3d 1, 7 (1st Cir. 1998) ("[T]he necessity for giving a supplementary instruction to the jury is a matter within the sound discretion of the trial court.").  Even if the evidence at trial could have supported limiting the jury's inquiry to a City policy or custom specifically in drug cases, the case was not given to the jurors in that posture, and the district court understandably resisted changing the boundaries of their deliberation at that point in the proceedings.  Cf. Sheek v. Asia Badger, Inc., 235 F.3d 687, 698 (1st Cir. 2000) ("[J]ury instructions given during the course of deliberations come 'at a particularly delicate juncture' and require the court to construct its wording carefully.")(quoting Testa v. Wal-Mart Stores, Inc., 144 F.3d 173, 175 (1st Cir. 1998)).

---

[5] We find it unnecessary to address defendants' contention that plaintiffs failed to preserve their objection to the supplemental instruction.

Indeed, in phrasing its response, the district court appears to have made a conscious effort to preserve plaintiffs' position as much as possible, but without re-directing the jury's focus. The judge avoided telling the jury expressly that the alleged policy related to all searches pursuant to warrants and not only to drug-related searches. Rather, its instruction – "Question 5 relates to searches conducted pursuant to court-ordered search warrants" – allowed enough ambiguity to remain that a jury so inclined could have found that plaintiffs suffered injury from a general search practice that stemmed from inadequate training, but routinely occurred only in drug cases. This may well have been the most appropriate response possible in these circumstances. Cf. Testa, 144 F.3d at 175 ("Careful craftsmanship of a supplemental jury instruction requires the district court to walk a fine line – the court can err as easily by overinclusiveness as by underinclusiveness.").[6]

Our case law provides that, in responding to a jury question, a judge "may either supplement or simply reaffirm the original instruction," Elliott, 134 F.3d at 7 (citation omitted). More may

_____

[6] We have tried to imagine a way in which the district court could have responded more substantively, without changing course from the earlier instructions and consistent with the evidence presented at trial. One possibility that came to mind was to add to the court's brief response a statement that a city policy may be found to exist even if it is not implemented in every circumstance. Plaintiffs, of course, did not request such an instruction, and the possibility of other responses does not in any event make the court's choice an abuse of discretion.

be required "if the jurors' question clearly indicated confusion with respect to an important legal concept." Id. Here, there is no indication that the jurors lacked understanding of the legal principles they were asked to apply; rather, they sought to clarify the relevant factual context. Because that confusion stemmed from the way in which the proceedings had been conducted up to that point in the trial, with plaintiffs' acquiescence, we cannot fault the judge for declining to give a more expansive response.

Consequently, we find no basis for disturbing the district court's judgment.

Affirmed.