# United States Court of Appeals
## For the First Circuit

No. 04-1072

NEREIDA FELICIANO-HILL,

Plaintiff, Appellant,

v.

ANTHONY J. PRINCIPI,
Secretary of the Department of Veterans Affairs,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Salvador E. Casellas, U.S. District Judge]

Before

Lipez and Howard, Circuit Judges,
and Gibson,* Senior Circuit Judge.

John Ward-Llambias for the appellant.
Lisa E. Bhatia-Gautier, Assistant United States Attorney,
with whom H.S. Garcia, United States Attorney and Miguel A.
Fernandez, Assistant United States Attorney, Chief, Civil
Division, were on brief, for the appellee.

February 22, 2006

---

* Of the Eighth Circuit, sitting by designation.

**LIPEZ**, **Circuit Judge**.  On behalf of herself, her husband, and their conjugal partnership, Dr. Nereida Feliciano-Hill, a psychiatrist formerly employed by the Department of Veterans Affairs (the department), brought suit in the district court, alleging that the department had failed to accommodate her disability, as required by the Rehabilitation Act, 29 U.S.C. §§ 701, 794 (1999).  The case went to trial, and a jury found for the department.  Dr. Feliciano-Hill now appeals the district court's denial of her motion for a new trial.  We affirm.

## I.

We review the facts in the light most favorable to the verdict.  Whitfield v. Melendez-Rivera, 431 F.3d 1, 3 (1st Cir. 2005).  Dr. Feliciano-Hill worked at the department's San Juan Medical Center from 1990 until 2000.  Her tenure at the hospital was uneventful until 1999, when the University of Puerto Rico Medical School stopped sending psychiatry residents to work at the Medical Center.  In November 1999, the department reached an agreement with Dr. Feliciano-Hill's union, pursuant to which senior physicians would be required to perform the tasks formerly delegated to residents.  Under the agreement, a staff psychiatrist would be available for patient care at all times.  Consequently, Dr. Feliciano-Hill would be required to work one night or weekend shift a month, and occasionally (about once a month) to see patients at their bedsides.  Previously, she had worked only

-2-

Tuesday through Friday and had seen patients only in her office. Dr. Feliciano-Hill expressed unhappiness -- to her union steward and to officials in Washington D.C. -- about the new arrangement.

After her complaints failed to produce results, Dr. Feliciano-Hill wrote a letter to the Medical Center's human resources staff, explaining that she suffered from arthritis and had difficulty walking, and requesting a "reasonable accommodation . . . under the ADA . . . for a qualified person with a disability."[1] The department sought medical certification of Dr. Feliciano-Hill's condition. Dr. Feliciano-Hill's rheumatologist, Dr. Rafael Gonzalez-Alcover, produced first a "diagnostic impression," and later a diagnosis of rheumatoid arthritis, among other conditions. When the department asked him to clarify how Dr. Feliciano-Hill's medical condition affected her, Dr. Gonzalez-Alcover opined that she was "unable to cover the different areas as required in her new responsibilities." Dr. Gonzalez-Alcover declined the department's request for more specific information about Dr. Feliciano-Hill's limitations.

On the basis of Dr. Gonzalez-Alcover's diagnosis, the department offered to provide Dr. Feliciano-Hill a motorized

_____

[1] Although Feliciano-Hill initially cited the Americans with Disabilities Act as grounds for relief, the ADA does not provide for suits against the federal government. However, the Rehabilitation Act, which predated the ADA, does and generally is analogous in its prohibition of employment discrimination. See Calero-Cerezo v. Dep't of Justice, 355 F.3d 6, 19 (2004).

wheelchair to use when, on occasion, she had to travel around the hospital. She refused to be so accommodated, averring that she was "not crippled or otherwise in need of a wheelchair" and did not want to appear disabled to her patients and colleagues. She requested, instead, that she be allowed to see all of her patients in her office, during her customary working hours.

Dr. Feliciano-Hill refused to come to work during her negotiations with the hospital because, she said, she felt harassed. She asked at least twice for leave. The department granted her two weeks of sick leave but denied her request for a longer term of unpaid leave. The department offered Dr. Feliciano-Hill an opportunity to return to work. Instead, she resigned her position at the hospital.

Dr. Feliciano-Hill, her husband, and their conjugal partnership then brought suit under the Rehabilitation Act, alleging that the department had failed reasonably to accommodate her disability, and that her supervisors had treated her "in an aggressive and hostile manner" in retaliation for her request for accommodation. The plaintiffs complained of lost income, emotional distress, and loss of consortium.

The district court granted summary judgment on the claims brought by Mr. Hill and the conjugal partnership, after concluding that their claims were not cognizable under the Rehabilitation

-4-

Act.[2]  The district court rejected the department's motion for summary judgment as to Dr. Feliciano-Hill.  The case went to trial, focused on whether the department had denied Dr. Feliciano-Hill a reasonable accommodation for a disability.  Dr. Feliciano-Hill attempted to prove that she was disabled by rheumatoid arthritis and that the department's offer to provide her a motorized wheelchair did not constitute a reasonable accommodation for her disability.  The department sought to convince the jury that Dr. Feliciano-Hill actually was not disabled, and that if she was, the department's offer to provide her a motorized wheelchair was a reasonable accommodation.  Dr. Feliciano-Hill also contended that the department took adverse employment action against her in retaliation for her disability discrimination complaint.  The department denied that allegation as well.

On the reasonable accommodation issue, both sides presented rheumatologists, who gave conflicting opinions as to whether Dr. Feliciano-Hill was disabled.  Dr. Feliciano-Hill relied on testimony from Dr. Gonzalez-Alcover, from whom she had sought treatment.[3]  Dr. Gonzalez-Alcover testified that Dr. Feliciano-Hill

[2] The district court adopted the magistrate judge's recommendations as to resolution of the summary judgment motion.  The magistrate judge had concluded that the Rehabilitation Act does not provide relief to employees' spouses or conjugal partnerships on employment discrimination claims.  Dr. Feliciano Hill has not appealed from that ruling.

[3] Dr. Gonzalez-Alcover testified on the first day of the trial, the only day for which we do not have a transcript.  Apparently, the

-5-

may have suffered from rheumatoid arthritis, but that he could not so conclude for certain. Although he recalled that Dr. Feliciano-Hill had complained of pain in her joints, he admitted that his records did not contain any reference to a complaint by Dr. Feliciano-Hill that she was having difficulty walking. However, Dr. Gonzalez-Alcover reaffirmed his judgment, first expressed in letters to the department around the time of Dr. Feliciano-Hill's request for an accommodation, that she was capable only of "limited ambulation." He agreed that a motorized wheelchair would have aided Dr. Feliciano-Hill.

Dr. Ramadés Sierra-Zorita, testifying for the department, opined that "there was nothing to suggest that [Dr. Feliciano-Hill] had rheumatoid arthritis" at the time she made her complaints. Dr. Sierra-Zorita testified that he had performed four physical examinations of Dr. Feliciano-Hill and inspected her medical records. In his view, she did not have "much of a difficulty in

transcript of his testimony was not produced, and Dr. Feliciano-Hill has not submitted to us any statement summarizing Dr. Gonzalez-Alcover's testimony. See Fed. R. App. P. 10(c). We recount Dr. Gonzalez-Alcover's testimony as it has been summarized in the briefs and other record materials. Although the available record allows us to decide this case with confidence, we note that Dr. Feliciano-Hill was obligated to produce the transcript or a statement of the evidence and that she must "'bear the brunt of an insufficient record on appeal.'" Surprenant v. Rivas, 424 F.3d 5, 15 (1st Cir. 2005) (quoting Real v. Hogan, 828 F.2d 58, 60 (1st Cir. 1987)); see also Fed. R. App. P. 10(b)(2) ("If the appellant intends to urge on appeal that a finding or conclusion is unsupported by the evidence or is contrary to the evidence, the appellant must include a transcript of all evidence relevant to that finding or conclusion.").

walking."  Indeed, he said, he had found no evidence that Dr. Feliciano-Hill was disabled at all in "her history and from what was seen on the available record."  Dr. Sierra-Zorita testified that he had no opinion regarding the suitability of a motorized wheelchair as an accommodation for a disabled psychiatrist.

Dr. Feliciano-Hill twice asked the district court to limit the impact of Dr. Sierra-Zorita's testimony.  Though she had not challenged Dr. Sierra-Zorita's qualifications before trial (as the district court required), Dr. Feliciano-Hill objected to the admission of his testimony at trial on the ground that his report and testimony did not meet the standards for expert evidence imposed by <u>Daubert</u> v. <u>Merrell Dow Pharmaceuticals, Inc.</u>, 509 U.S. 579 (1993), and Fed. R. Evid. 702.  The district court admitted the testimony over the objection.  Dr. Feliciano-Hill also asked the district court to augment its charge to the jury (taken from Dr. Feliciano-Hill's written proposed instructions) with an additional later-proposed instruction that Dr. Sierra-Zorita's testimony should not be considered on the question of reasonable accommodation.  The district court declined this request as well.

On the retaliation issue, Dr. Feliciano-Hill sought to prove that her supervisors had reacted to her complaints about the new union agreement by subjecting her to harassment, by requiring her to comply with unnecessary bureaucratic requests, and by denying her leave.  She pointed particularly to two interactions

with her supervisor, Dr. Luis Iguina. One concerned a veteran who was Dr. Feliciano-Hill's patient. Dr. Iguina complained to Dr. Feliciano-Hill that, despite the patient's urgent need for psychiatric services, Dr. Feliciano-Hill had cancelled three of her appointments, resulting in a delay that Dr. Iguina feared could verge on "patient abuse." Dr. Feliciano-Hill averred that the patient was difficult and that she would need support from other professionals to care for the patient. Dr. Iguina arranged for such support. Dr. Felicano-Hill contended at trial that Dr. Iguina's reference to "patient abuse" helped create a hostile working environment. On another occasion, Dr. Iguina said something to the effect that "women are always complaining about their illnesses," a remark that Dr. Feliciano-Hill contended was harassment.

Dr. Feliciano-Hill also argued that the department created a hostile work environment and prompted her resignation by asking repeatedly for more specific medical documentation about her disability, and that the department retaliated against her by refusing to grant all of her requests for leave.

After the jury returned a verdict for the defendant, Dr. Feliciano-Hill moved for a new trial. She argued that the court should not have allowed the department's medical expert to testify, and should have given the limiting instruction she had requested. Additionally, she contended that the jury's verdict was against the

weight of the evidence.  The district court rejected both arguments in a written order, <u>Feliciano-Hill, et al.</u> v. <u>Principi, et al.</u>, Cv. No. 00-2439(SEC) (D.P.R. 2004), and this appeal followed.

**II.**

Dr. Feliciano-Hill enumerates ten issues for review. These fall into three categories -- one is her contention that Dr. Sierra-Zorita should not have been allowed to testify, two are arguments that the judge should have given a limiting instruction as to that doctor's testimony, and seven are objections to the jury's view of the evidence.  We address first the issues relating to Dr. Sierra-Zorita and second the arguments about the sufficiency of the evidence.

**A.  Defense Expert Testimony**

1. Admission of Dr. Sierra-Zorita's Testimony and Report

Dr. Feliciano-Hill argues that, pursuant to <u>Daubert</u> and Rule 702, the district court should have refused to admit Dr. Sierra-Zorita's testimony as evidence.  The district court denied Dr. Feliciano-Hill's motion both because it was untimely -- Dr. Feliciano-Hill waited until the moments before Dr. Sierra-Zorita's testimony to object, even though she had received the doctor's report five months earlier -- and because Dr. Sierra-Zorita's report and proposed testimony met the applicable standard.  The district court was correct on both grounds.

Parties have an obligation to object to an expert's testimony in a timely fashion, so that the expert's proposed testimony can be evaluated with care. Dr. Feliciano-Hill did not make a timely motion here and has not offered any reason for her delay. The district court was on firm ground in refusing her motion as untimely. See Alfred v. Caterpillar, Inc., 262 F.3d 1083, 1087 (10th Cir. 2003) (explaining that "because Daubert generally contemplates a 'gatekeeping' function, not a 'gotcha' junction," untimely Daubert motions should be considered "only in rare circumstances"); see also Club Car, Inc. v. Club Car (Quebec) Import, Inc. 362 F.3d 775, 780 (11th Cir. 2004) ("A Daubert objection not raised before trial may be rejected as untimely.").

In any case, Dr. Feliciano-Hill's Daubert motion lacked merit. Dr. Feliciano-Hill argues that Dr. Sierra-Zorita's testimony should have been excluded because Dr. Sierra-Zorita's opinion differed from that of Dr. Feliciano-Hill's treating physician, Dr. Gonzalez-Alcover, a "very well respected and beloved rheumatologist," and because Dr. Sierra-Zorita's report did not "cite[] medical authorities and w[as] based on 'experience' and general knowledge." The mere fact that two experts disagree is not grounds for excluding one's testimony. Even if we were to assume that Dr. Gonzalez-Alcover was somehow more qualified than Dr. Sierra-Zorita -- and there is no reason in the record for us to do so -- the district court could not have excluded Dr. Sierra-

-10-

Zorita's testimony on that ground alone. See Holbrook v. Lykes Bros. S.S. Co., 80 F.3d 777, 782 (3d Cir. 1996) ("[W]itnesses may be competent to testify as experts even though they may not, in the court's eyes, be the 'best' qualified. Who is 'best' qualified is a matter of weight upon which reasonable jurors may disagree.").

We also reject Dr. Feliciano-Hill's assertion that Dr. Sierra-Zorita's testimony did not meet the standard of Daubert and Rule 702 because the doctor failed to support his diagnosis with citations to published authorities. As the district court noted, the underlying medical question -- whether Dr. Feliciano-Hill's medical condition prevented her from walking around the hospital -- was "not a complex medical situation." Dr. Sierra-Zorita's testimony and report did not involve novel medical theories. The doctor was called upon only to offer a routine diagnosis, on a patient he had examined, pertaining to a common condition well within his particular expertise. In this case, the doctor's training and experience placed his report and testimony well above the Rule 702/Daubert bar. Indeed, even in more complicated cases when an examining physician calls upon training and experience to offer a differential diagnosis (a determination of which of two or more diseases, presenting with similar symptoms, has caused a patient's ailments), most courts have found no Daubert problem. See, e.g., Bitler v. A.O. Smith Corp., 391 F.3d 1114, 1123 (10th Cir. 2004) (collecting cases holding that qualified doctor's

-11-

differential diagnosis of patient was sufficiently reliable for Rule 702 and <u>Daubert</u> purposes); <u>Mattis</u> v. <u>Carlon Elec. Products</u>, 295 F.3d 856, 861 (8th Cir. 2002) ("A medical opinion based upon a proper differential diagnosis is sufficiently reliable to satisfy <u>Daubert</u>.").

2.  Limiting Instruction

Dr. Feliciano-Hill argues that the district court should have instructed the jury that Dr. Sierra-Zorita's testimony should only be considered on the question of whether Dr. Feliciano-Hill was disabled, not on the issue of reasonable accommodation.  The district court denied the motion both because it was untimely -- Feliciano-Hill had not requested the instruction in her written proposed jury instructions, which the court had adopted -- and because it was unnecessary.  Again, the district court ruled correctly.

The instruction Dr. Feliciano-Hill requested was plainly unnecessary.  The district court noted, and the transcript confirms, that "[t]he witness was . . . crystal clear" that he had no opinion regarding the reasonableness of a motorized wheelchair as an accommodation for a person with rheumatoid arthritis. As the district court concluded, "The jury ha[d] that message."  The district court did not err in refusing to offer an unnecessary instruction about the scope of Dr. Sierra-Zorita's testimony. <u>See</u>, <u>e.g.</u>, <u>Elliot</u> v. <u>S.D. Warren Co.</u>, 134 F.3d 1, 6 (1st Cir. 1998)

-12-

(finding no error in district court's refusal to give requested instruction that was unnecessary to explain the applicable law to the jury).

## B.  Sufficiency of the Evidence

We will reverse the district court's refusal to order a new trial on the ground of insufficient evidence only where "the jury's verdict was so clearly against the weight of the evidence as to constitute a manifest miscarriage of justice."  Wagenmann v. Adams, 829 F.2d 196, 201 (1st Cir. 1987) (internal quotation marks omitted).  This is not such a case.

### 1.  Reasonable Accommodation

To succeed on her Rehabilitation Act reasonable accommodation claim Dr. Feliciano-Hill had to convince the jury:

> (1) that she suffered from a 'disability' within the meaning of the statute; (2) that she was a qualified individual in that she was able to perform the essential functions of her job, either with or without a reasonable accommodation; and (3) that, despite her employer's knowledge of her disability, the employer did not offer a reasonable accommodation for the disability.

Calero-Cerezo, 355 F.3d at 20.  The jury could have rejected Dr. Feliciano-Hill's case either because Dr. Feliciano-Hill was not disabled or because the department had offered a reasonable accommodation in the form of a motorized wheelchair.  (The department agreed that Dr. Feliciano-Hill possessed the qualifications for her job.)  Because we have focused on the

-13-

dueling expert testimony on whether Dr. Feliciano-Hill was disabled, we will review the sufficiency of the evidence on that issue.

Dr. Sierra-Zorita, a qualified expert, gave compelling testimony that Dr. Feliciano-Hill did not actually have rheumatoid arthritis. He also testified that the plaintiff had little difficulty walking. Moreover, Dr. Gonzalez-Alcover's contrary testimony was not emphatic. He revealed that Dr. Feliciano-Hill's lab tests were negative for rheumatoid arthritis and that Dr. Feliciano-Hill had no swelling in her joints. Dr. Gonzalez-Alcover admitted that he had examined Dr. Feliciano-Hill only four times over the six-year period leading up to her complaint. He indicated that he had no knowledge of how far Dr. Feliciano-Hill would have been required to walk at her job and that he was not familiar with the layout of the Medical Center. On this evidence the jury could reject Dr. Feliciano-Hill's claim that she was disabled.

2. Retaliation

This leaves only Dr. Feliciano-Hill's argument that the department retaliated against her for her disability discrimination complaint, a claim she is entitled to press even though the jury reasonably rejected her case on outright discrimination. See Soileau v. Guilford of Maine, Inc., 105 F.3d 12, 16 (1st Cir. 1997) (recognizing that retaliation claim may succeed even where disability discrimination claim fails). To make out a case for

retaliation, "a plaintiff must show that (i) she undertook protected conduct, (ii) she suffered an adverse employment action, and (iii) the two were causally linked." Noviello v. City of Boston, 398 F.3d 76, 88 (1st Cir. 2005); see also Weber v. Cranston Sch. Comm., 212 F.3d 41, 48 (1st Cir. 2000) (holding that Rehabilitation Act prohibits retaliation). At trial, Dr. Feliciano-Hill argued that she suffered an "adverse employment action" through the creation of a hostile work environment and a constructive termination. To prove that a hostile work environment constituted "adverse employment action," the plaintiff must show that the harassment she complains of was "so severe or pervasive that it alters the conditions of the plaintiff's employment." Marrero v. Goya of Puerto Rico, Inc., 304 F.3d 7, 26 (1st Cir 2002). Similarly, to establish a constructive discharge, a plaintiff must show "that her working conditions were so difficult or unpleasant that a reasonable person in her shoes would have felt compelled to resign," an objective standard that "cannot be triggered solely by the employee's subjective beliefs, no matter how sincerely held." Id. at 28 (internal quotation marks and brackets omitted). The question whether a work environment is sufficiently hostile to create liability is best left to a jury. Che v. Mass. Bay Trans. Auth., 342 F.3d 31, 40 (1st Cir. 2003).

Here, the evidence allowed the jury to find that Dr. Feliciano-Hill's treatment by the department was not "objectively

intolerable." Marrero, 304 F.3d at 28. On the record, the jury could have found that Dr. Iguina's concerns about the treatment of the female veteran were properly expressed and unobjectionable. And the jury could have found, after listening to testimony on the point, that Dr. Iguina's remark "about women complaining a lot" and any other isolated comments from her peers did not constitute severe or pervasive harassment, or a course of conduct that would have led a reasonable person to resign.

As for the department's insistence that Dr. Feliciano-Hill provide medical documentation supporting her insistence that she could not walk around the hospital, the jury could have found, in reliance on the evidence, that the hospital reasonably needed more specific guidance from Dr. Alcover-Gonzalez and that its procedures were not harassing or unreasonable. Finally, the jury could have found that the department's denial of Dr. Feliciano-Hill's request for additional leave did not, in the circumstances, create a hostile work environment or constitute an "adverse employment action."

In short, on examination of the record we cannot conclude that the verdict represented a "manifest miscarriage of justice." Wagenmann, 829 F.2d at 201.

**Affirmed**.

-16-