**Not for Publication in West's Federal Reporter**

# United States Court of Appeals
## For the First Circuit

Nos. 17-1365, 17-1523

XIAOYAN TANG,

Plaintiff, Appellant,

v.

CITIZENS BANK, a/k/a Citizens Bank, N.A., a/k/a Citizens, N.A.,
a/k/a Citizens, a/k/a RBS Citizens, N.A.; RBS CITIZENS, N.A.;
THE ROYAL BANK OF SCOTLAND GROUP, a/k/a RBS; DAVID NACKLEY,

Defendants, Appellees.

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. William G. Young, U.S. District Judge]

Before

Lynch, Circuit Judge,
Souter,* Associate Justice,
and Kayatta, Circuit Judge.

Robert Herrick, with whom Nicholson Herrick LLP was on
brief, for appellant.
Mark W. Batten, with whom Samantha L. Regenbogen, Rebecca
J. Sivitz, and Proskauer Rose LLP were on brief, for appellees.

July 11, 2018

---

* Hon. David H. Souter, Associate Justice (Ret.) of the Supreme
Court of the United States, sitting by designation.

**SOUTER**, **Associate Justice**.  This is an appeal by the plaintiff, Xiaoyan Tang, from an adverse judgment in her action for violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, brought against Citizens Bank, N.A. and others (collectively "Citizens").  She claims error in a jury instruction and in the denial of a new trial to supplant a verdict for defendants said to be against the clear weight of credible evidence.  We affirm.

This litigation, begun by Tang acting pro se, is now in its fifth year and has been before us before, when we vacated summary judgment for the defendants.  See Tang v. Citizens Bank, N.A., 821 F.3d 206 (1st Cir. 2016).  Our opinion in the earlier appeal contains an exhaustive account of the record on summary judgment as viewed most favorably to Tang, and we will make reference to the subsequent trial record when we reach the issue of evidentiary weight.  But at this point, a terse account of facts with record support will suffice to explain the circumstances in which the case arose and returned to this court.

Tang emigrated from China and was hired to work as a portfolio manager in the Commercial Real Estate section of Citizens' Boston branch.  Her superiors there were dissatisfied with her work in several aspects including thoroughness, timeliness and relations with clients.  She chose to seek a

transfer to the bank's Technology Banking group, a move that was stymied by the unsatisfactory formal rating given to her job performance until that rating was raised a notch to render her passage to the new group possible under the bank's personnel rules.

She was interviewed by the leader of the Technology Banking Group, defendant David Nackley.  He approved the transfer after interviewing Tang over lunch, where the discourse ranged into personal matters, as it did in subsequent conversations.  At various times Nackley spoke, for example, of Thai au pairs working in his home, their acquisition of English proficiency and, according to Tang, their taste in bathing suits.  He pressed Tang to disclose the name of her boyfriend in order to resolve a potential conflict of interest, invited her to visit Citizens' Connecticut headquarters and on at least one occasion engaged in tasteless reference to the body ("ass").[1]  In the meantime Tang received some compliments on her job performance, although the dissatisfaction persisted in ratings comparable to those in her earlier job, calling for improvement.  At one point she complained to the bank's Human Resources department about the sexual tone of Nackley's remarks, though

---

[1] The parties dispute the events in question, including the nature of this conversation, with Tang testifying to significantly harassing behavior by Nackley.

the reviewer who investigated found the complaint unfounded. When her performance failed to improve, she was let go.

Tang's response was to bring this Title VII case (along with state causes of action no longer pending), which her subsequently acquired counsel litigated before the jury as two separate claims. The first was a charge of sexual harassment (on both a quid pro quo and hostile work environment theory); the second, one of retaliation for the complaint to the personnel department about Nackley.

Quid pro quo sexual harassment claims require proof of these elements: (1) "an employee or supervisor uses his or her superior position to extract sexual favors from a subordinate employee," and (2) "if denied those favors, retaliates by taking action adversely affecting the subordinate's employment." Valentín-Almeyda v. Municipality Of Aguadilla, 447 F.3d 85, 94 (1st Cir. 2006) (internal quotation marks omitted).

At the close of the evidence, however, the court's charge did not mention quid pro quo. Instead, the oral jury instruction was in these words:

> She has to prove . . . an objective test, which means that a reasonable person in Ms. Tang's position doing the job she was doing with the job requirements, whatever they were, and the structure that Citizens Bank had with the supervisors and associates and the like that they had, . . . if subjected to this interaction on these occasions with Mr. Nackley, that person would have

understood that he was soliciting a sexual relationship with her, that the objective person would have understood that he was propositioning for sexual relations.  . . .  I will tell you, if you believe her testimony in its entirety to include, as she testified to gestures and the like, if you believe that, you could find that was sexual harassment within the law.

Now, on that first theory, if she was subjected to sexual harassment, that constitutes a hostile work environment and she is entitled to damages.  J.A. 1277.

At the close of the charge, Tang's counsel objected that the court had failed to give any quid pro quo instruction at all.  The judge replied that he had covered the subject in a way favorable to Tang by instructing that if the jury found that a reasonable person would have understood Nackley's behavior as amounting to sexually propositioning Tang, the jury could on the basis of that finding alone return a verdict for Tang.  Tang's counsel responded, "Okay, fair enough," and made no further objection on the point.

We think it is clear that counsel's response to the judge's reply was a withdrawal of the objection.  Even if a withdrawal must be explicit, see United States v. Rodriguez, 311 F.3d 435, 437 (1st Cir. 2002), this one was.  The point is to make certain that while the jury is still there and open to instruction the judge is made to understand that he is no longer being requested to correct, clarify or supplement the

instruction he had given.  We fail to see how any judge could have heard, "Okay, fair enough," as anything but such a withdrawal.

It follows that when the jury retired to deliberate, there was no objection on the record, a circumstance in which this court has made it clear that a subsequently dissatisfied party has bypassed its opportunity to object under Federal Rule of Civil Procedure 51(c)(2)(B), and has thus waived the objection.  See Ray v. Ropes & Gray LLP, 799 F.3d 99, 112 (1st Cir. 2015).

Tang's second trial theory, retaliation, required her to show that she took protected action that was the cause of subsequent adverse action against her.  See Collazo v. Bristol-Myers Squibb Mfg., Inc., 617 F.3d 39, 46 (1st Cir. 2010).  The protected action was identified as her complaint to Human Resources that Nackley had made unlawful sexual advances, and the adverse action was the bank's firing her.  The bank did not contest either element, leaving for decision only the question whether she was fired because of making the complaint.  Tang argues that her motion to vacate the defendant's verdict on the retaliation claim should have been granted owing to that verdict's being against the clear weight of the evidence of retaliatory causation linking her complaint and the bank's action in dismissing her.

Tang's burden to prove that is a very heavy one, for she must show that the evidence points only to the conclusion that she had proven the causal connection so clearly that it would be a miscarriage of justice to allow the verdict to stand. See Goulet v. New Penn Motor Exp., Inc., 512 F.3d 34, 44 (1st Cir. 2008). In weighing the evidence subject to this standard, moreover, the facts must be viewed in the light most favorable to Citizens, see Feliciano-Hill v. Principi, 439 F.3d 18, 21 (1st Cir. 2006), and the trial judge's conclusion that she failed to make that required showing must be given the deference accorded in review for abuse of discretion, see Goulet, 512 F.3d at 44.

Tang does not come close to surmounting these hurdles, although this is not to say that the trial record was entirely one-sided against her. As already mentioned, evidence in her favor included her own testimony that Nackley was clearly indiscreet in conversations with her, to the point of vulgarity on at least one occasion. Although Nackley provided some mitigating explanation, there is no serious question that some of Nackley's language was untoward. Even more obviously favorable to Tang's case on causation were complimentary evaluations of her efforts to improve her level of work, as contained in some performance reviews.

Standing against her claim that her employment was not terminated because of inadequate performance on the job, however, there are two significant bodies of evidence. The first shows that the criticism for unacceptable performance began in the Real Estate group before Nackley had any involvement with her employment. Indeed, her unsatisfactory rating in formal evaluations would have made her requested transfer to Technology Banking impossible under the bank's rules if the rating had not been replaced with a more favorable one, for the apparent purpose of moving Real Estate's problem to Technology Banking.

The second line of evidence in favor of the verdict shows a consistency in the notations of her deficiencies throughout her time at Citizens, as attested by supervisory employees other than Nackley, before as well as after his involvement. In the first stage of her employment (with the Real Estate group) she was observed to be late in completing assignments, to be deficient in analyzing facts, to have difficulty communicating and to become emotionally distraught over criticism of her work. Her later shortcomings at Technology Banking included, but were not limited to, mathematical inaccuracy, shallow analysis, untimely completion, poor personal communications and emotional outbursts. Although it is true that the later observations were by people who might

have been influenced by Nackley, there is no evidence that any of them skewed judgment to please him and no reason to question the jury's capacity to evaluate the reliability and credibility of the sources of the evidence put before it.

In Tang's first appeal, after our review of the evidence in the summary judgment record, we noted that a jury could find that she was fired for inadequate performance. See Tang, 821 F. 3d at 222. Suffice it to say that the same is true here, when the trial evidence must be regarded most favorably to Citizens. No one could seriously conclude that it was not possible for the jury to find that retaliation for Tang's complaint about Nackley was not the but-for cause for letting her go, and no one could find on the part of the trial judge an abuse of discretion in denying the motion to vacate the verdict and order a new trial.

Affirmed.