**William QUILES et al., Plaintiffs,**

v.

**Joaquin KILSON et al., Defendants.**

**No. CIV.A.98–40242–NMG.**

United States District Court,
D. Massachusetts.

Feb. 23, 2004.

Jessica Hedges, Stephen B. Hrones, Hrones & Garrity, Boston, MA, for plaintiffs.

William P. Breen, Jr., Murphy, Hesse, Tormey & Lehane, LLP, Quincy, MA, for defendants.

## MEMORANDUM & ORDER

GORTON, District Judge.

Pending before the Court is the Magistrate Judge's Report and Recommendation with respect to cross motions for summary judgment in an action, pursuant to 42 U.S.C. § 1983, for an alleged violation of the plaintiffs' civil rights.

### I. *Background*

Plaintiffs William Quiles (through his mother Ofelia Quiles) Jose Cortez (through his mother Consuelo Cortez), Maria, Esbeida and Miribel Guzman, Goya and Reyna Cortez (through their mother Reyna Larios) and Ramon Larios have sued defendants Joaquin Kilson, Edward Thurston, William Lawrence, Donald Richards, Jude Chabot, Peter Kymalainen, Kenneth Maynard, John Murray, all City of Fitchburg police officers, for violation of their Fourth Amendment rights to be free from illegal searches and seizures (Count I). The plaintiffs have also filed claims against the City of Fitchburg ("the City") for violating their Constitutional rights by maintaining a custom or policy of failing to train its officers adequately on the proper method for executing a search warrant (Count II) and under the Massachusetts Torts Claims Act, M.G.L. c. 258 ("the MTCA") for the acts and omissions of its

police officers in conducting a search of their persons (Count III).

On September 5, 1996, City of Fitchburg Police Officer Joaquin Kilson ("Officer Kilson") filed an application with the Fitchburg District Court for a warrant to search an apartment on the second floor of a three story multi-family building ("the Apartment"). The building is located at 7 Congress Street, Fitchburg, Massachusetts ("7 Congress Street"). In his affidavit, filed with the application, Officer Kilson avers that a confidential informant ("CI") informed him that Renya and Holmer Larios were selling illegal drugs at the Apartment. The affidavit described four controlled buys made by the CI at the Apartment and in front of 7 Congress Street. All of the buys were made from Reyna Larios. Nowhere in his affidavit does Officer Kilson mention that any other persons were present at the Apartment at the time of the controlled buys or at any other time that the CI bought drugs at that location.

In his affidavit Officer Kilson requested permission to search:

> all persons present ... as it is impossible to tell who may be in the house at the time of the execution of the warrant, their identities may not be known and their sole purpose for being there is to purchase cocaine, deliver cocaine or pick up money from the sale of cocaine.

However, in the application for the warrant he requested permission only to search Reyna and Homer Larios.

On September 5, 1996, the Fitchburg District Court issued a search warrant authorizing the search of the Apartment, including the "curtilage". The warrant provides that police were to search for "property" on the person or in possession of Homer or Renyalda Larios and that the police were:

also commanded to search any person present who may be found to have such property in his or her possession or under his or her control or to whom such property may have been delivered.

The following day, the defendant police officers, as well as Officer Pepple, a female officer, executed the search warrant and searched the Apartment. The officers entered the premises and handcuffed the adults, Reynalda Larios and her brother, plaintiff Ramon Larios.

At the time of the search the other plaintiffs in this action, all minors, either resided with their families at 7 Congress Street or were visiting family members who resided there. Prior to executing the warrant the police had not been provided with any information which would suggest that children were selling drugs at the Apartment. Neither the search warrant nor the application for the search warrant alleged that children were involved in any illegal activity.

According to the plaintiffs, at the time of the search, Goya Cortez (aged 10) and her cousin Jose Cortez (aged eight) were walking down the internal stairway at 7 Congress Street when the police arrived. One of the police officers asked Goya where she thought she was going. An officer (it is unclear if it was the same officer) brandished a firearm, pointed it at the children and told them to go back upstairs. That same officer told Goya to stop crying and at one point pushed her so she fell on her knees. The police officers then shepherded the children into the Apartment.

Maria Guzman (aged 15) was allegedly on the sidewalk in front of 7 Congress Street with friends and Miribel Guzman (aged 12) was allegedly sitting on the porch near the street when the police arrived. The police officers took Maria and Miribel into the Apartment. The other plaintiffs, William Quiles (aged six), Esbei-

da Guzman (aged 16) and Reyna Cortez (aged 11), as well as adult plaintiff Ramon Larios, were inside the Apartment at the time of the search.

The plaintiffs contend that the police then strip searched all of the defendants. The male children were taken to the living room and the female children were taken to Reynalda Larios' bedroom for the search. Male children were searched by an unidentified male officer and female children were searched by Officer Pepple. An adult family member was present during the searches. The plaintiffs were told to remove all their clothes, including underwear and visual inspections were made of their bodies, including their mouths.

The minor plaintiffs were frightened during the search and allege that as a result they have suffered severe emotional distress. The plaintiffs allege that the Fitchburg Police Department's written procedures require an officer to have particularized, individual suspicion to justify even a pat-frisk of a person on the premises where a search warrant is executed. As a result of this incident the minor plaintiffs, through their parents, filed the instant suit.

On April 1, 2002, defendants filed a motion for summary judgment in this case, claiming that the plaintiffs cannot establish a deprivation of their Fourth Amendment rights. The individual defendants argue that: 1) the female officer who allegedly strip searched the female plaintiffs is not named as a defendant and that no defendant police officer searched any of the female plaintiffs, 2) that the male plaintiffs cannot identify the male officer who allegedly strip searched them and 3) each of the individual defendants is entitled to qualified immunity.

The defendants additionally argue that the plaintiffs cannot prevail against the City of Fitchburg because they cannot prove any deprivation of a federally protected right, i.e. 1) they can prove no official custom, policy or procedure of the City which caused the alleged deprivation of their federal civil rights and 2) there is no evidence of negligence by the City or its employees which can support liability.

After court-authorized discovery and time-consuming disputes with respect to such discovery, the plaintiffs filed their opposition to defendants' motion and their own cross motion for summary judgment. Plaintiffs contend that: 1) when the minor plaintiffs were strip searched they suffered a deprivation of their Fourth Amendment rights as a matter of law because there was no reasonable suspicion that they had contraband on their persons to justify the search and 2) the City is liable under 42 U.S.C. § 1983 as a matter of law because the implications of the common practice in the Fitchburg Police Department to strip search everyone present at the site of an execution of a search warrant, including children, are so obviously unconstitutional as to constitute deliberate indifference to the rights of its citizens. Defendants filed their opposition to the plaintiff's motion on May 5, 2003.

On June 12, 2003, this Court referred the pending dispositive motions to Magistrate Judge Swartwood. On November 11, 2003, after a hearing and thorough consideration, the Magistrate Judge issued his Report and Recommendation in this matter. He recommended that defendants' motion for summary judgment be denied in its entirety and that plaintiffs' motion for summary judgment be allowed with respect to Officer Kilson and denied with respect to the other defendants. Defendants filed their objection to the Report and Recommendation on December 4, 2003.

## II. *Discussion*

The role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Mesnick v. General Elec. Co.*, 950 F.2d 816, 822 (1st Cir.1991)(quoting *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 50 (1st Cir.1990)). The burden is upon the moving party to show, based upon the pleadings, discovery and affidavits, "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* A *genuine* issue of material fact exists where the evidence with respect to the material fact in dispute "is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

Once the moving party has satisfied its burden, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine, triable issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The Court must view the entire record in the light most hospitable to the non-moving party and indulge all reasonable inferences in that party's favor. *O'Connor v. Steeves*, 994 F.2d 905, 907 (1st Cir.1993). If, after viewing the record in the non-moving party's favor, the Court determines that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law, summary judgment is appropriate.

### A. *Count I: Alleged Violation of 42 U.S.C. § 1983 by Police Officers*

The defendants seek summary judgment on Count I of the complaint, the § 1983

charges against the individual police officers, arguing that: 1) the plaintiffs cannot establish deprivation of their Fourth Amendment rights, 2) the plaintiffs cannot identify the police officers who allegedly searched them and 3) even if plaintiffs Fourth Amendment rights were violated, the police officers are entitled to qualified immunity. The plaintiffs seek the converse summary judgment on Count I on the grounds that strip searches must be justified by reasonable suspicion and that the police had no reasonable suspicion to search the plaintiffs.

The Magistrate Judge found that the search warrant in question was invalid, that the police had no probable cause to search the children and that, as such, the search violated their Fourth Amendment rights. He also found a genuine issue of material fact as to whether the police were protected by qualified immunity, except with respect to Officer Kilson, who was found not to have qualified immunity. The Magistrate Judge recommended summary judgment for the plaintiff against Officer Kilson but he also recommended denying plaintiffs' motion with respect to the other officers and denying defendants' motion for summary judgment in its entirety. This Court respectfully disagrees.

■ The search of the four children in the Apartment from the beginning did not violate their Fourth Amendment rights. The police had a valid "all persons" warrant, which allowed them to search "any person present" in the Apartment. The Magistrate Judge found that the warrant was invalid because many jurisdictions have held that such warrants are unconstitutional.

The First Circuit has not, however, ruled on the question of the validity of "all persons" warrants. The Fitchburg Dis-

trict Court issued an "all persons" warrant and, as such, the police officers were acting under a valid warrant when they searched four of the plaintiffs in the apartment (i.e. William Quiles, Esbeida Guzman, Reyna Cortez and Ramon Larios, hereafter the "inside plaintiffs").

A more difficult question arises with respect to the children who were not in the Apartment to begin with but were shepherded into it by the police officers. Goya and Jose Cortez allege that they were in the common stairwell when the search began. Maria and Miribel Guzman allege they were outside the building when the police arrived. The defendants do not dispute those allegations. In fact, the defendants have never denied that these second four plaintiffs (hereafter the "outside plaintiffs") were not in the Apartment when the police originally entered it. The search warrant only authorized the police to search "any person present" in the Apartment. Although the warrant permitted a search of the "curtilage" of the Apartment, i.e. any surrounding area under the subjects' control, the hallway and exterior area of a three-family apartment building cannot be considered curtilage.

If the outside plaintiffs were not in the Apartment at the time of the execution of the warrant, the warrant did not authorize the police to search those plaintiffs. As such, a genuine issue of material fact remains as to whether the search of the outside plaintiffs violated their Fourth Amendment rights.

Beyond the searches of the outside plaintiffs, a second issue is whether the alleged strip searches violated the plaintiffs' rights. At the time the incident occurred, the First Circuit Court of Appeals had not established the constitutional prerequisite for a strip search when executing a search warrant, although the Court later held in *Swain v. Spinney* that a strip and

visual body cavity search is justified and permitted by "reasonable suspicion" that the person is concealing drugs and/or weapons on their person. 117 F.3d 1, 5 (1st Cir.1997). Defendants contend that the law at the time was not settled and even if it had been they had "reasonable suspicion" that the plaintiffs might have had drugs concealed upon their persons. Officer Kilson testified that he had often found drugs concealed by minors on their persons when conducting searches for illegal drugs.

The plaintiffs respond that an officer may not justify a search of a person solely by that person's presence at the site of illegal activity. They argue that the informant never told Officer Kilson that children were involved in the selling of drugs and that on the date of the raid the children did not appear to be engaging in drug-related activity. They contend that there was no evidence to support an inference that the plaintiffs, children between the ages of seven and 16, were at the scene for illegal purposes.

Under the circumstances a genuine issue remains as to whether the defendants were justified in strip searching the plaintiffs, even under the unclear pre-*Swain* standard. Officer Kilson offered testimony that it was the policy of Fitchburg Police Department to conduct strip searches and that contraband was often found on young children during searches for illegal drugs. It is not definitively clear that strip searches under such circumstances were unjustified.

■■■ In deciding the defendants' motion for summary judgment on Count I of the complaint, the crucial question is whether the defendants are immune from suit under the doctrine of qualified immunity. That doctrine provides that government officials performing discretionary

functions are shielded from liability for civil damages in certain circumstances. *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). In evaluating a claim for qualified immunity, a court must engage in a three-step inquiry. The court must determine: 1) whether the plaintiffs' allegations, if true, establish a constitutional violation, 2) whether the right was clearly established at the time of the alleged violation and 3) "whether a reasonable officer, similarly situated, would understand that the challenged conduct violated that established right." The answer to all three inquiries must be affirmative in order to overcome the defense of qualified immunity. *Kauch v. Department for Children, Youth And Their Families,* 321 F.3d 1, 4 (1st Cir.2003).

■ In the instant case, the defendants are entitled to qualified immunity with respect to the strip searches conducted. It is possible that the plaintiffs' allegations about the City's practice of strip searching, if true, would establish a constitutional violation. The law at the time of this alleged violation, however, was not clear because the First Circuit had not yet decided *Swain.* The law does not require state actors to "carry a crystal ball" as to what the future trajectory of the law will be. *Crooker v. Metallo,* 5 F.3d 583, 585 (1st Cir.1993). The defendants cannot be expected to have known that the searches, made pursuant to a valid warrant and a City policy with respect to strip searching, violated the law. The individual defendants are, therefore, entitled to qualified immunity with respect to the inside plaintiffs.[1]

■ With respect to the outside plaintiffs, the question of qualified immunity is more problematic. The searches themselves were questionable because if the defendants were not in the Apartment, they were almost certainly illegal. The "all persons" warrant applied only to the persons in the Apartment. There is nothing in the affidavit or elsewhere to suggest that children were involved in selling drugs at 7 Congress Street. If they were not in the Apartment, there was no probable cause to search the outside plaintiffs. Unlike the law with respect to strip searching, which was unclear at the time of the incident, the law relating to probable cause was clear. An objectively reasonable officer should have known that it violated the Fourth Amendment rights of the outside plaintiffs to search them if they were not originally inside the Apartment. The individual defendants are not, therefore, entitled to a qualified immunity defense with respect to the outside plaintiffs.

Based on the foregoing, this Court declines to accept and adopt all of the Magistrate Judge's Report and Recommendation. Defendants' motion for summary judgment on Count I of the complaint will be allowed as to the inside plaintiffs and denied as to the outside plaintiffs. Plaintiffs' motion for summary judgment on Count I of the complaint will be denied as to all defendants.

B. *Count II: Alleged Violation of 42 U.S.C. § 1983 by the City of Fitchburg*

Count II of the complaint alleges that the City of Fitchburg violated 42 U.S.C. § 1983 by exhibiting a deliberate indifference to citizens' rights by not training its police officers in the proper method of executing a search warrant. The defendants argue that summary judgment in their favor is warranted on Count II be-

---

1. Because the officers are entitled to qualified immunity with regard to the strip searches, the Court does not address the their argument that they are entitled to summary judgment because plaintiffs cannot identify which officers conducted those searches.

232 232

cause the plaintiffs have failed to establish any official custom, policy or procedure of the City which caused deprivation of a federally protected civil right. The plaintiffs respond that, to the contrary, they are entitled to summary judgment on Count II because the deposition of Officer Kilson indicates that the illegal strip searches resulted directly from a municipal policy or custom. In his Report and Recommendation, Magistrate Judge Swartwood found that a genuine issue of material fact exists as to whether the City of Fitchburg is liable under 42 U.S.C. § 1983. This Court concurs with that finding.

■ Cities may be subject to suit under § 1983 only when there is a "direct causal link" between an official policy or custom of the city and an alleged constitutional violation. *City of Canton v. Harris,* 489 U.S. 378, 375, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). The plaintiff seeking damages for an incident resulting from an unconstitutional policy of a city must show either an official policy or a governmental "custom" that violates the Constitution. *Id.* If the plaintiff relies on a custom, rather than an official policy, the custom or practice must be "so settled and widespread" that city officials can be said to have actual or constructive knowledge of it, yet to have done nothing to end it. *Bordanaro v. McLeod,* 871 F.2d 1151, 1156 (1st Cir.1989).

In the instant case, the plaintiffs argue that it was a custom of the City of Fitchburg to conduct illegal searches such as the strip searches done of them in violation of the Fourth Amendment. Plaintiffs also allege that the City failed to train its police officers how to conduct searches correctly. Officer Kilson testified in deposition that Fitchburg police officers routinely search all persons on the premises when conducting a search for illegal drugs and that he routinely conducts strip searches whenever

he executes a search warrant for illegal drugs. The plaintiffs have, however, also alleged, without offering specific evidence in support of their allegations, that a written policy of the City requires officers to have individualized suspicion that a person is in possession of contraband before that person may be searched. Furthermore, Officer Kilson testified that he has, on numerous occasions, been trained on the correct method of conducting searches.

■ Given the conflicting testimony on the matter, a genuine issue of material fact remains as to whether the City had a custom or policy of conducting strip searches. The Court will, therefore, accept and adopt the Magistrate Judge's Report and Recommendation to deny summary judgment for both the plaintiffs and the defendants with respect to Count II of the complaint.

## C. *Count III: Alleged MTCA Claims Against the City of Fitchburg*

■ Count III of the complaint alleges a violation of the MTCA by the City of Fitchburg. The defendants contend that they are entitled to summary judgment with respect to that Count because the plaintiffs have no evidence to support the contention that the individual defendants failed to act reasonably in conducting the strip searches of the plaintiffs and that there is no evidence that the training provided by the City was deficient. The plaintiffs do not seek summary judgment on Count III.

The Magistrate Judge found a genuine issue of material fact as to whether the Plaintiffs have stated a claim under the MTCA. This Court agrees. As discussed *supra,* the liability of the City is not clear based upon the evidence before this Court. Accordingly, the Magistrate Judge's Report and Recommendation to deny defen-

dants' motion for summary judgment on Count III will accepted and adopted.

## ORDER

Upon careful consideration of the Magistrate Judge's Report and Recommendation (Docket No. 68) and defendant's objection thereto (Docket No.69), this Court accepts and adopts, in part, and declines to accept and adopt, in part, the Report and Recommendation as follows:

1. Defendants' Motion for Summary Judgment (Docket No. 47) is, with respect to Count I, ALLOWED as to plaintiffs William Quiles, Esbeida Guzman, Reyna Cortez and Ramon Larios and DENIED as to plaintiffs Goya and Jose Cortez and Miribel and Maria Guzman;

2. Defendant's Motion for Summary Judgment (Docket No. 47) is, with respect to Counts II and III, DENIED; and

3. Plaintiffs' Motion for Summary Judgment (Docket No. 60) is DENIED in its entirety.

**So ordered.**