NOTICE:  All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports.  If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

14-P-364                                        Appeals Court


COMMONWEALTH  vs.  MICHAEL SYLVIA.


No. 14-P-364.

Bristol.     January 9, 2015. - May 5, 2015.

Present:  Katzmann, Sullivan, & Blake, JJ.


Arrest.  Resisting Arrest.  Practice, Criminal, Required
    finding.



Indictment found and returned in the Superior Court
Department on October 26, 2012.

The case was tried before Robert J. Kane, J.


Thomas C. Foley for the defendant.
Corey T. Mastin, Assistant District Attorney, for the
Commonwealth.


KATZMANN, J.  Having been convicted by a Superior Court

jury of resisting arrest, the defendant appeals.  He contends

that the evidence was insufficient to support a conviction under

the second prong of the resisting arrest statute, "using any

other means which creates a substantial risk of causing bodily

injury to such police officer or another."  G. L. c. 268, § 32B(a)(2), inserted by St. 1995, c. 276.  We affirm.

Background.  Under the familiar standard, on appeal the evidence is viewed in the light most favorable to the Commonwealth to determine whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  Commonwealth v. Latimore, 378 Mass. 671, 677 (1979) (citation omitted).

Here, the analysis begins when Officer Kenneth Mendes advised the defendant that he was subject to arrest, and continues through the defendant's flight and physical resistance to the officer's efforts to place the defendant into physical custody.  The officer first made contact with the defendant, for whom he had an arrest warrant, when, while patrolling in a cruiser with his partner in a high crime area, he noticed the defendant walking on a New Bedford street shortly before 2 A.M. The officer exited the cruiser and told the defendant that he had lawful authority to place him under arrest.  The defendant, saying "no" and shaking his head in a manner understood by the officer to mean "no," fled on foot.  The officer observed the defendant continuously hold the waistband of his pants with one hand as he fled.  Seeking to immobilize the defendant, the

officer, while chasing him, deployed his "Taser"[1] to no effect. Eventually, the officer was able to grab onto the defendant's shoulder and jacket, but the defendant was able to turn and shuck the jacket.  The foot pursuit continued, as the defendant maintained his hold on the waistband of his pants, through a parking lot and onto a public roadway under construction.  There was no asphalt on the roadway.  The conditions of the roadway included excavated dirt, steel plates, compacted dirt, and other construction site objects, such as barrels.  As the defendant ran across the public roadway, he threw a metal object onto the street.[2]  The defendant continued to flee but no longer held the waistband of his pants.  He ran onto the sidewalk, crossed the public roadway again, and went into the aforementioned parking lot.  The officer was able to catch the fatigued defendant and put him on the ground.  On the ground, the officer attempted to roll the defendant onto his stomach to apply handcuffs, but the defendant repeatedly pulled his arms away and moved his hands. As the "struggle" continued and the defendant continued pulling away, the officer successfully deployed his Taser to gain the

[1] The term Taser is "used for a gun that fires electrified darts to stun and immobilize a person."  Merriam-Webster's Collegiate Dictionary 1279 (11th ed. 2005).

[2] A firearm was retrieved where the officer had observed the defendant throw a metallic object.  It was tested for fingerprints but no usable prints were found.  The defendant was acquitted by the jury of possession of a firearm without a firearm identification card.

defendant's compliance.  The officer was then able to place handcuffs on the defendant.

Discussion.  A defendant resists arrest if "he knowingly prevents or attempts to prevent a police officer, acting under color of his official authority, from effecting an arrest of the actor or another, by (1) using or threatening to use physical force or violence against the police officer or another; or (2) using any other means which creates a substantial risk of causing bodily injury to such police officer or another."  G. L. c. 268, § 32B(a), inserted by St. 1995, c. 276.  The defendant concedes that his use of physical force would satisfy the elements of resisting arrest under G. L. c. 268, § 32B(a)(1).  However, in his jury charge -- which did not draw objection from either the Commonwealth or the defendant -- the judge restricted the Commonwealth to proof of resistance "by using means which created a substantial risk of causing bodily injury to Officer Mendes."  As the Commonwealth acknowledges, its proof must have been sufficient to sustain a conviction on the theory of liability on which the case was submitted to the jury.  See Commonwealth v. Rodriguez, 58 Mass. App. Ct. 610, 621 (2003).  We thus examine the sufficiency of the evidence under G. L. c. 268, § 32B(a)(2).

The focus of prong two of the resisting arrest statute is on "criminalizing the 'creation' of the risk" (emphasis

supplied). Commonwealth v. Montoya, 457 Mass. 102, 105 (2010).
In assessing the sufficiency of the evidence, the analysis is
not a static dissection of factors in isolation but an
evaluation informed by the dynamic fullness of the totality of
the circumstances. Here, that totality encompasses the rapidly
evolving, uncertain, and tense environment of foot pursuit. To
be sure, flight from arrest, alone, does not create a
substantial risk of bodily injury to the arresting officer or
another. See id. at 104 & n.4. However, the circumstances of
flight from arrest can create such a risk. Id. at 104-105.
Here, the defendant had been told that he was going to be
arrested, and his ensuing actions and flight were clearly in
response to that communication. Contrast Commonwealth v. Grant,
71 Mass. App. Ct. 205, 209 (2008) ("During the defendant's
flight from the police, there was no evidence to prove that he
understood that the officers were effecting an arrest. He was
simply running away from them"). The defendant twice led the
pursuing officer in the late night darkness onto a dug-up,
public roadway under construction with various terrain and
object obstacles that posed a substantial risk of injury.[3]
Moreover, motor vehicles could have been traveling on that

---

[3] Indeed, when the officer's partner sought to drive the
cruiser to cut off the fleeing defendant's pathway, the cruiser
slid on the gravel and steel plates on the dug-up road, hitting
the brick facade of a café.

roadway, to the danger of the officer in hot pursuit. That no pedestrians or vehicles were observed at 2 A.M. does not mean that there was no substantial risk of bodily injury from potential traffic on a street that is ordinarily busy during daytime and nighttime hours. See Commonwealth v. Montoya, supra at 105-106 (even where pursuing officers chose not to scale a fence and jump twenty feet into shallow water, that they did not actively subject themselves to risk did not defeat a finding of "substantial risk of bodily injury").

Furthermore, "conduct . . . [that] represents an active, physical refusal to submit to the authority of the arresting officers, and opposition to their efforts to effect the arrest," constitutes circumstances that can create a substantial risk of injury to the arresting officer. Commonwealth v. Maylott, 65 Mass. App. Ct. 466, 469-470 (2006). "While the defendant's exertion of force in an attempt to prevent his arrest may not have overcome the police officers, the circumstances . . . presented a substantial risk of injury to them." Ibid. In Commonwealth v. Grandison, 433 Mass. 135, 144-145 (2001), the defendant stiffened and pulled his arms free as the officers were attempting to handcuff him. The defendant's action in Grandison, "especially at the moment he freed his arm," was sufficient for a rational trier of fact to conclude that the defendant by "any other means . . . created a substantial risk

of causing bodily injury to the police officers."  Id. at 145
(quotations omitted).  See Commonwealth v. Lender, 66 Mass. App.
Ct. 303, 306 (2006) ("The defendant's resistance to being
handcuffed and placed in the cruiser is sufficient resistance to
amount to . . . a means creating a substantial risk of causing
bodily injury to the arresting officer" [quotations omitted]).
Here, the first time the officer caught up with the defendant,
the officer grabbed onto the jacket worn by the defendant and a
"scuffle" ensued, during which the defendant evaded the
officer's effort to effect an arrest, as the defendant turned
and "wiggled out" of the jacket.  The second time the officer
caught up with the defendant, they were on the ground and there
was a "struggle" to gain control of the defendant's arms as he
"kept pulling away" from the officer.  Here, as in Commonwealth
v. Grandison, supra at 144-145, the officer's "characterization
of the defendant's behavior as 'resisting' or 'struggling'" is
not mere opinion but grounded in the evidentiary narrative.  It
was only after the officer deployed the Taser that he was able
to overcome the defendant's "resistance" and place handcuffs on
him.

We conclude that a rational trier of fact could have found
the defendant's conduct presented a substantial risk of bodily
injury to the officer.

Judgment affirmed.