NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

23-P-250                                          Appeals Court

COMMONWEALTH  vs.  CARLOS S. CINTRON.

No. 23-P-250.

Barnstable.     November 9, 2023. – March 11, 2024.

Present:  Ditkoff, Englander, & Walsh, JJ.

Controlled Substances.  Idle and Disorderly Person.  Search and
    Seizure, Warrant, Home of third person.  Practice,
    Criminal, Motion to suppress, Warrant.  Evidence, Prior
    misconduct, State of police knowledge.  Witness, Police
    officer.

Complaint received and sworn to in the Barnstable Division
of the District Court Department on November 25, 2020.

A pretrial motion to suppress evidence was heard by Therese
M. Wright, J., and the case was tried before her.

Catherine B. Sullivan Ledwidge for the defendant.
Rose-Ellen El Khoury, Assistant District Attorney, for the
Commonwealth.

DITKOFF, J.  The defendant, Carlos S. Cintron, appeals from

a conviction after a jury trial in the District Court of

possession of fentanyl, G. L. c. 94C, § 34.[1]  We conclude that a search warrant authorizing a search of "any person present" allows a search of any person present in the property to be searched during the execution of the search warrant, including persons present during the execution but who exit the property before the police announce the search to the residents, at least where those persons remain in the vicinity of the property and in the view of the police at all times prior to the search. Further concluding that the officers' testimony that one of the officers knew the defendant did not create a substantial risk of a miscarriage of justice, we affirm.

1.  Background.  Police received a tip that Christopher Gasper (target) was selling heroin and fentanyl from his single family house in West Yarmouth.  They conducted surveillance and observed visitors meeting with the target outside of the house or entering the house for several minutes while leaving their

---

[1] The jury convicted the defendant of simple possession as a lesser included offense of possession with the intent to distribute, G. L. c. 94C, § 32 (a).  The jury also convicted the defendant of disorderly conduct, G. L. c. 272, § 53.  That conviction was placed on file.  "Although the record does not reveal whether the defendant consented to the filing of the conviction, as required, he did not raise the conviction before . . . this court.  Accordingly, it is not the subject of this appeal and we will not address it" (citation omitted). Commonwealth v. Brown, 456 Mass. 708, 709 n.1 (2010), S.C., 466 Mass. 1007 (2013).  The trial judge allowed the defendant's motion for a required finding of not guilty of resisting arrest, G. L. c. 268, § 32B.

cars running.  After police conducted three successful controlled purchases at the house, a search warrant issued from the Barnstable District Court authorizing police to search the house, the target, and "any person present who may be found to have [fentanyl, cocaine, and related items] in his or her possession or under his or her control or to whom such property may have been delivered."

The process of executing the search warrant began at approximately 5:30 P.M. on November 24, 2020, with police surveillance.  The lead case detective assigned a "surveillance officer, who was posted on the residence, who just sat on the residence to make observations" and who "can tell [the other officers] what he sees and what people might be coming in and out of the house and what activity might be taking place, whether the target is there or not."  Around 6:15 P.M., the surveillance officer observed "a black Cadillac sedan pull in to the driveway."  The defendant, who was driving, and a passenger (neither of whom were the target)[2] got out of the car and went into the house.  Five to ten minutes later, they returned outside, and the defendant remained standing in the driveway.

_____

[2] There is no indication in the record that the surveillance officer was familiar with the defendant or the passenger or that the detectives expected or intended to encounter the defendant or the passenger.

At this point, the target left the house (presumably what the police were waiting for), got into a truck, and drove away. Officers stopped him shortly thereafter and arrested him.[3]

Five or six unmarked cruisers then pulled up to the house with their blue lights on. Multiple officers yelled, "Police. Search warrant," and the defendant tried to flee. The surveillance officer tackled the defendant while he was running into the street.

After the defendant was handcuffed, the surveillance officer asked the defendant "if he had anything on him that was going to hurt . . . or poke" the officer. The defendant responded that he had a knife on him and a bag of marijuana. The officer searched the defendant and removed the knife and a bag containing 4.78 grams of a "brown powdery substance" from his pockets. The substance was later determined to be fentanyl.[4]

The defendant and the other person who had been in the sedan testified at trial, but not at the suppression hearing.

---

[3] The target ultimately pleaded guilty in the Superior Court to trafficking in eighteen grams or more of fentanyl, G. L. c. 94C, § 32E (c) (1), and to possession of a class B substance with the intent to distribute, as a subsequent offender, G. L. c. 94C, § 32A (b), and agreed to forfeit $11,340. The jury, of course, did not hear this.

[4] Police also recovered $627 in cash. A State trooper with fifteen years of experience in a drug taskforce unit testified that "possession of around 5 grams of Fentanyl and around $600 in cash" would be indicia of distribution.

They both testified that the other person, not the defendant, had driven the sedan to the house. Neither of them entered the house but rather were there to retrieve old license plates.[5] The defendant ran when the police arrived because he did not recognize them as police. The defendant testified that he had a knife, a bag of marijuana, and some money he had earned as a security guard, but no fentanyl.

2. Motion to suppress. a. Standard of review. "On appeal, we review a ruling on a motion to suppress by accepting 'the judge's subsidiary findings of fact absent clear error but conduct an independent review of [the] ultimate findings and conclusions of law.'" Commonwealth v. Polanco, 92 Mass. App. Ct. 764, 769 (2018), quoting Commonwealth v. Ramos, 470 Mass. 740, 742 (2015). "We may affirm the denial of a motion to suppress on any ground supported by the record." Commonwealth v. Washington, 449 Mass. 476, 483 (2007).

b. Search of "any person present". A search warrant authorizing the search of any person present "can only be valid where the underlying circumstances presented to the issuing judge or clerk clearly demonstrate probable cause to search the named premises and to believe that all persons present are involved in the criminal activity afoot." Commonwealth v.

---

[5] The other person testified that he had left the license plates in his girlfriend's car.

Brown, 68 Mass. App. Ct. 261, 266 (2007), quoting Commonwealth
v. Smith, 370 Mass. 335, 344, cert. denied, 429 U.S. 944 (1976).
Even where the warrant authorizes the search of any person
present, the police must limit such searches to those within the
scope of the probable cause.  See Commonwealth v. Souza, 42
Mass. App. Ct. 186, 187, 191 & n.3 (1997) (any person present
"[search] warrant [was] constitutionally defective as to the
[forty-three year old] defendant" where "police were
specifically trying to uncover a drug sale operation targeted at
junior and senior high school students").

Here, there is no challenge to the propriety of the search
warrant authorizing the search of any person present, nor does
the defendant contest that a person who entered the house for
five to ten minutes was within the scope of the probable cause
established in the warrant affidavit.  The question then remains
whether the defendant was a person present in the house during
the execution of the search warrant.  We conclude that the
execution of the search warrant here started before the
defendant exited the house, and therefore the defendant, who
remained in the vicinity of the house and in sight of the
police, was a "person present" who could be searched pursuant to
the warrant.[6]

_____

    [6] Accordingly, we need not determine whether the portion of
the driveway the defendant was standing in was part of the

The defendant argues that the only moment that matters for this purpose is the moment when the police announced the search, at which point he was standing in the driveway. We rejected this view in Commonwealth v. Perez, 68 Mass. App. Ct. 282, 286 (2007). There, "the defendant arrived at the premises during the police search, knocked on the door, attempted to enter, and when he saw the police, attempted to leave." Id. Police searched him, and we held that the search was proper under the "any person present" provision of the warrant because "the defendant, arriving at the premises during a police search, shared a like relationship with the premises and, therefore, could be searched in these circumstances." Id. Accord State v. Doyle, 918 P.2d 141, 145 (Utah Ct. App.), cert. denied, 925 P.2d 963 (Utah 1996) ("The time of execution could be limited to the exact time the police serve the warrant, or it could be the entire time the police are legitimately on the premises under the authority of the warrant. We believe the latter is a more reasonable interpretation").

The execution of a search warrant is not a single moment in time, but rather a process, which can be lengthy depending on the scope of the search and the surrounding circumstances. As

---

curtilage of the house. See Commonwealth v. Wittey, 492 Mass. 161, 174-175 (2023). That issue was poorly preserved and barely explored in the suppression hearing.

this case demonstrates, police often delay announcing a search to minimize the danger to everyone involved. Here, the police waited until the target had left the house, thus reducing the risk of violent resistance. This seems like a sensible practice, and it would be unwise for us to create disincentives to the police's executing a search warrant in the safest possible fashion.

Here, while the surveillance officer was watching the house in anticipation of the announcement of the search, he observed the defendant drive up, enter the house, and then exit a few minutes later and stand in the driveway. The surveillance officer observed the defendant in the driveway from the time he exited the house until the police announced the search and searched the defendant. Under these facts, where the defendant entered the house during the preannouncement surveillance and remained in the vicinity and in sight of the police between exiting the house and the police's announcing the search, the police could search him under the "any person present" provision of the search warrant.[7] This view accords with that of our

---

[7] We do not decide when, if ever, a search pursuant to an any person present provision in a search warrant would be proper where a person present had left the environs of the property or the view of the police prior to the search. See People v. Green, 33 N.Y.2d 496, 499 (1974) (warrant authorizing search of apartment and people "found therein" did not justify police following defendant and searching him "over 19 blocks away").

colleagues in other States.  See Stokes v. State, 604 So. 2d 836, 837-838 (Fla. Dist. Ct. App.), review denied, 613 So. 2d 9 (1992) ("sufficient connection between [the defendant] and the premises to be searched" where defendant was "seated on the stairs immediately in front of the apartment," officer knew that "drugs were sometimes sold on the stairs of the apartment," and warrant allowed search of any person present); People v. Holmes, 206 A.D.2d 604, 605 (N.Y. 1994), aff'd after remand, 218 A.D.2d 924 (N.Y. 1995) (pursuant to any person present warrant, police could search defendant "walking down a common interior stairwell" outside target apartment); People v. Easterbrook, 43 A.D.2d 719, 720 (N.Y. 1973), aff'd, 35 N.Y.2d 913 (1974), cert. denied, 421 U.S. 965 (1975) ("We are further of the opinion that the search was not rendered invalid by virtue of the fact that it took place outside the apartment.  A search conducted a few feet from the door of the premises of a person who had just emerged therefrom is sufficiently proximate to the described premises to fall within the purview of the [any person present] warrant").  Cf. Quiles v. Kilson, 337 F. Supp. 2d 224, 230 (D. Mass. 2004), aff'd, 426 F.3d 486 (1st Cir. 2005) (warrant authorizing search of "any person present" did not extend to children outside apartment).

3.  Trial testimony that officer knew the defendant. "Evidence of prior bad acts is generally inadmissible to show a

defendant's propensity to commit a crime." Commonwealth v. Foreman, 101 Mass. App. Ct. 398, 401 (2022), quoting Commonwealth v. Don, 483 Mass. 697, 713 (2019). Evidence that a police officer knew persons "from 'dealing with them in the past'" is suspect, and should be avoided. Commonwealth v. Gonzalez, 47 Mass. App. Ct. 255, 259 (1999). "Because the defendant did not object at trial to the challenged testimony . . . , 'we review his claims to determine whether there was error, and, if so, whether the error created a substantial risk of a miscarriage of justice.'" Commonwealth v. Diaz, 100 Mass. App. Ct. 588, 596 (2022), quoting Commonwealth v. Bannister, 94 Mass. App. Ct. 815, 822 (2019).

Here, the lead case detective and his partner unresponsively testified that the partner, who had twenty-two years of police experience, was "familiar with the defendant" and "recognized Mr. Cintron, as [the officer had] dealt with him in the past." Evidence that an officer knew a defendant can be proper where relevant and not unduly prejudicial. See Commonwealth v. Westbrook, 58 Mass. App. Ct. 692, 699 (2003) (testimony that police had driven defendant home one week prior to assault properly admitted to explain how police knew where defendant lived); Commonwealth v. Pleas, 49 Mass. App. Ct. 321, 328-329 (2000) (police officer properly allowed to identify defendant in surveillance videotape where picture quality poor,

officer knew defendant well socially, and defendant had changed his appearance).  Here, where the defendant was charged with disorderly conduct and resisting arrest, the evidence was arguably relevant to show -- contrary to what the defendant hinted at in his opening statement and would eventually testify to -- that he must have recognized the officers and known they were police.  See Commonwealth v. Accime, 476 Mass. 469, 472-473 (2017), quoting Commonwealth v. Sholley, 432 Mass. 721, 727 n.7 (2000), cert. denied, 532 U.S. 980 (2001) ("the disorderly conduct provision in [G. L. c. 272,] § 53[,] requires proof that a person, 'with purpose to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof,' engaged in 'fighting or threatening, or in violent or tumultuous behavior' or created 'a hazardous or physically offensive condition by any act which serves no legitimate purpose of the actor'"); Commonwealth v. Sylvia, 87 Mass. App. Ct. 340, 341-342 (2015), quoting G. L. c. 268, § 32B (a) ("A defendant resists arrest if 'he knowingly prevents or attempts to prevent a police officer, acting under color of his official authority, from effecting an arrest of the actor or another, by [1] using or threatening to use physical force or violence against the police officer or another; or [2] using any other means which creates a substantial risk of causing bodily injury to such police officer or another'").

     In any event, there was no substantial risk of a miscarriage of justice.  The two "remark[s] in the instant case about [the officer] knowing [the defendant] w[ere] isolated and not adverted to in closing arguments."  Gonzalez, 47 Mass. App. Ct. at 259 (holding that "[i]nsufficient prejudice attached to the remark [that the officer knew the defendant] to have it constitute reversible error").  The jury were told repeatedly that the defendant was not the target of the search warrant, acquitted him of possession with intent to distribute, and convicted him only of disorderly conduct and the lesser included offense of straight possession.  There was no substantial risk of a miscarriage of justice.  See Commonwealth v. Starkweather, 79 Mass. App. Ct. 791, 803 (2011).

                         Judgment affirmed.